**EXCISE BOARD OF OKLAHOMA COUNTY et al. v. BOARD OF EDUCATION OF OKLAHOMA CITY.**

No. 27278. Oct. 20, 1936.

Lewis Morris, Co. Atty., B. C. Logsdon, Asst. Co. Atty., and J. D. Lydick, for plaintiffs in error.

John H. Shirk, for intervener, J. K. Wells

Frank Wilkins, for defendant in error.

Ned Looney and Edgar Fenton, amici curiae.

OSBORN, V. C. J. This action was instituted in the district court of Oklahoma county by the board of education of the city of Oklahoma City, hereinafter referred to as plaintiff, against the excise board of Oklahoma county, hereinafter referred to as defendant, as an action in mandamus, wherein it is sought to compel the excise board to

approve a request for supplemental appropriations out of the funds of the said school district for the fiscal year 1935-36. From a judgment granting the writ, defendant has appealed.

On June 1, 1936, plaintiff, board of education, passed a resolution requesting the defendant, excise board, and the members thereof, to approve certain appropriations itemized as follows:

"New Site for Future North
West High School_____$ 73,710.00
"Addition to Site for Frank-
lin School 820 West Cali-
fornia _____ 31,000.00
"Interest on Warrants_____ 15,000.00

"Total _____$119,710.00"

The board honored the request for an appropriation to pay the interest on warrants, but refused the request for appropriations for building sites, whereupon this action was instituted. At the conclusion of the hearing in the district court, the court found that the financial statement presented by the board of education to the excise board clearly shows a surplus computed in the manner provided by the statute, and further found that a determination of the amount of money to be spent in acquiring the building sites was a responsibility resting solely with the board of education.

In the case of State ex rel. Board of Education of the City of Tulsa v. Morley, 168 Okla. 259, 34 P. (2d) 258, it was held that the excise board is not vested with discretionary power to determine the necessity for supplemental appropriations for a school district, and that the proper function of that board is to determine the correctness of the statement made by the school district and the existence or nonexistence of a surplus of revenue or unnecessary appropriations from which such supplemental appropriations could be made. See, also, Board of Education of Oklahoma County v. Excise Board of Oklahoma County, 175 Okla. 363, 53 P. (2d) 565. No criticism is made of the rule announced in the Morley Case, supra, but the excise board contends that on account of certain elements involved in this case the rule is not applicab'e.

Defendants' first proposition is as follows:

"That the purchase of a site for a future Northwest Highschool and of an addition to the site of Franklin School is not a current expense purpose of the 1935-36 fiscal year within the meaning and intention of section 12680, and subdivision (d) of section 12677, O. S. 1931."

Section 12680, O. S. 1931, which deals with the authority to make supplemental appropriations, provides, in part, as follows:

"Whenever the public welfare or the needs of any county, township, city, town or school district shall require, the excise board may, on call of the chairman, convene at any time for the purpose of making supplemental or additional appropriations for current expense purposes; provided, that all such appropriations authorizing the creation of an indebtedness, shall come within the limitations of section 26, article 10, of the Constitution. No supplemental or additional appropriation shall be made for any county, township, city, town, or school district in excess of the income and revenue provided or accumulated for the year. * * *"

Section 12677, O. S. 1931, as amended by article 13, chapter 66, Session Laws 1935, outlines in detail the various items of appropriation which may be made by the excise board. Subdivision (d) of said section provides as follows:

"The appropriations for boards of education of independent school districts shall be itemized so as to show in separate items the amount of funds appropriated; for salaries and compensation of officers and clerical employees; for salaries and compensation of teachers; for office supplies, blank books, stationery and printing; for light, fuel, and water, for library and school apparatus, for furniture and fixtures; **for the purchase of building sites and other real estate** with the appropriation of each thereof, separately stated: for construction of new buildings, with the appropriation for each new building separately stated; for maintenance of buildings, and ground, including salaries of janitors and care-takers; for such other expenditures as may be necessary and authorized by law, but not herein enumerated."

It is noted that appropriations for the purchase of building sites are authorized by the express terms of the statute. It has been the consistent holding of this court that current expense includes any expenditure for which a tax is authorized to be levied by the Legislature for any current fiscal year, other than the taxes authorized by sections 10 and 27 of article 10 of the Constitution. Oklahoma News Co. v. Ryan, 101 Okla. 151, 224 P. 969; M., K. & T. Ry. Co. v. Bennett, 122 Okla. 102, 250 P. 1021; Protest of Murray, 140 Okla. 240, 285 P. 80.

Defendants' second proposition is as follows:

"That the evidence discloses, as a matter of law, that no surplus of revenue accumulated for that fiscal year existed in the treasury of plaintiff on May 31, 1936, within the meaning and intention of section 12680, O. S. 1931."

Evidence was offered by plaintiff to the effect that on May 31, 1936, its financial statement reflected a general fund surplus of $137,771.85, which was the amount of excess of general fund assets over and above all general fund liabilities as of the date of the preparation of the statement. The assets referred to consisted of cash on hand and 1935 net taxes in process of collection. It was further shown that it was impossible to determine what portion of the surplus was cash on hand and what portion consisted of taxes in process of collection. We are referred to the second subdivision of section 12680, supra, which requires, as a condition precedent to making a supplemental appropriation, that the financial statement shall correctly reflect a "surplus in revenue" in funds available for current expenses. Defendant contends that the term "surplus in revenue" means cash on hand. In considering the statute as a whole, it appears that the term "surplus of revenue" means "income and revenue provided or accumulated for the year." Such was the holding of the court in the case of Coggeshall v. Smiley, 142 Okla. 8, 285 P. 48. It is asserted that the taxes in process of collection set up in the financial statement included the reserve set up for delinquent taxes, but the record discloses that only net taxes in process of collection were considered.

The evidence discloses that the items for which supplemental appropriations were requested by plaintiff were not inc'uded in the estimate made and approved at the beginning of the fiscal year. For this reason defendant contends that the taxes levied and collected for specific purposes would be diverted to other purposes by the supplemental appropriation, thereby violating the provisions of section 19, article 10, of the Constitution, which provides that no tax levied and collected for one purpose shall ever be devoted to another purpose. By the provisions of section 12678, O. S. 1931, as amended by chapter 85, Session Laws 1933, there are three specific funds provided for municipalities, general funds, sinking funds, and special funds. The general fund is the current expense fund. As hereinabove pointed out, expenditures for the purchase of building sites are for current expense purposes within the purview of the law. A supplemental appropriation for current expense purposes out of the general fund of the district does not contravene the constitutional provisions to which we have just referred.

J. K. Wells was permitted to intervene on behalf of himself and others similarly situated, and a pleading was filed resisting issuance of a writ. The questions raised by said intervener, however, have been hereinabove determined.

Other propositions are presented and argued in the briefs, but what we have said disposes of the determinative and controlling issues. In view of the conclusions which we have reached, this case is controlled by the former opinion in the case of State ex rel. v. Morley, supra.

The judgment of the trial court is affirmed.

McNEILL, C. J., and BAYLESS, BUSBY, WELCH, and CORN, JJ., concur. RILEY, PHELPS, and GIBSON, JJ., dissent.

RILEY, J. (dissenting). A writ of mandamus was issued by the trial court, at the instance of the board of education, to compel the excise board, plaintiff in error, to approve a supplemental appropriation for building sites in the total sum of $119,710.

While supplemental or additional appropriations are authorized by section 12680, O. S. 1931, certain conditions must exist before supplemental appropriations may be made. Among these is the requirement that the additional appropriation sought to be made must be for "current expense purposes."

Ordinarily, as measured by the decisions, uninfluenced by statutes and common acceptation, a capital investment, such as the purchase of land for building sites, does not fall within a current expense. However, under our statute, section 12677, O. S. 1931, subdivision (d), amended article 13, chapter 66, S. L. 1935, the item of appropriation "for the purchase of building sites" was grouped and classified as a current expense. This item is, by the statute, listed with other items of expense purely current in their nature, such as salaries, office supplies, lights, fuel, water, etc. This legislative classification of the item for building sites may have been in view of unusual conditions frequently arising in Oklahoma. The Legislature no doubt knew this to be a rapidly developing state, where, in the production of natural resources, such as petroleum, there is often a massing of the citizenship engaged in such industries. In connection with such situations it may be that occasionally, subject to original appropriations, a supplemental appropriation might be required for building sites upon which to locate temporary structures for schools, in order to educate children of people gathered in "mushroom" towns or rapidly developing communities. Such a situation might justify a supplemental appropriation for such a purpose, but such

a situation constitutes an emergency, and the requirement for supplemental or additional appropriation is a showing of need of the public welfare. Protest of Cities Service Gas Co., 162 Okla. 130, 19 P. (2d) 546, par. 3, syllabus.

Contrary, or aside from the ruling expressed in State ex rel. Morley, 168 Okla. 259, 34 P. (2d) 258, it is thought a legal discretion is vested in the excise board when that board acts under the provisions of section 12680, supra, to consider a request for a supplemental appropriation. But aside from the question as to whether legal discretion is vested in the excise board under such circumstances, it seems certain that agency is only empowered to act in this matter as provided by statute. Whenever the conditions expressed in the statute do not exist or do not affirmatively appear, then there is but one duty to be performed by the excise board, and that is to decline to act. The statute in this regard reads:

"Whenever the public welfare or the needs of any * * * school district shall require, the excise board may, on call of the chairman, convene at any time for the purpose of making supplemental or additional appropriations, for c u r r e n t expense purposes. * * *"

Then follows statutory inhibitions: (1) Such appropriations shall come within the limits of section 26, article 10, Constitution. (2) No such appropriation shall be in excess of the income and revenue provided or accumulated for the year. Then follows procedure which requires a financial statement in detail, a finding by the excise board of a surplus in revenue for current expenses, or a revocation or cancellation of existing appropriations whereby funds may be made available.

In the case of counties and cities the financial statement and request for supplemental appropriations is required to be published.

Throughout the text of the statute authorizing the excise board to act, conditions must be made to appear to the excise board. It is the excise board that makes findings. It is the excise board that finally acts, and unless the showing required by statute is made to appear to the excise board, it is without power or jurisdiction to approve such an appropriation. In the absence of such a showing in facts as distinguished from conclusions of the petitioning agency, it may be said that no discretion is vested in the excise board. Its only duty in such an event is to deny the request.

The first and foremost of these conditions expressed in the statute is a showing of facts constituting a requirement of public welfare. The statute reads:

"Whenever the public welfare or needs of any * * * school district shall require."

It is not enough that the school district express its conclusion. A set of facts showing the need is the statutory requirement.

In Bartlesville Water Co. v. Brann, 166 Okla. 253, 27 P. (2d) 345, it was said:

"It cannot be denied that the city of Bartlesville required a supplemental appropriation in the amount requested for the protection of its citizens and their property against loss by fire."

In the Morley Case, supra, the supplemental appropriations sought were for salaries, legal expense, audit, janitor supplies, etc., all purely current needs, the necessity of which could hardly be disputed, but herein there are no facts or circumstances exhibited to the excise board to show the necessity within the fiscal year drawing to a close at the time of the request, or any other time, for the purchase of the land. Such items might well be considered in the next original appropriation in the absence of a showing of necessity for the present purchase. Such a decision by this court would tend to discourage the practice said to be indulged by some public agencies, whereby accumulated revenues are sought to be expended near the close of the fiscal year to avoid a reduction in tax levies and to enlarge the function performed by the municipal subdivision. Such expenditures are not based on the needs or requirements of the public welfare.

By the enactment of chapter 85, S. L. 1933, stricken down in the Morley Case, the Legislature evidenced its desire and intention to revert to a sound governmental policy by requiring the use of surplus revenues for the reduction of tax levies. The Morley Case should be limited to the facts shown by that record. It should be distinguished from the facts now confronting the court. If necessary, it should be overruled. Adherence should be had to this court's ruling stated in Protest of Cities Service Gas Company, 162 Okla. 131, 19 P. (2d) 546, par. 3, syllabus:

"Supplemental appropriations are only authorized when the public welfare or the needs of the county, city, town, township, or school district require it."

For these reasons, I respectfully dissent.

PHELPS, J. (dissenting). I am unable to concur in the majority opinion. I par-

ticularly dissent from the rule laid down in the second paragraph of the syllabus wherein it is stated that the requested appropriation totaling $104,710 for the purpose of buying a site for one school and an addition to the site of another are "current expenses" of said school district. As supporting this statement the majority opinion cites Oklahoma News Co. v. Ryan, 101 Okla. 151, 224 P. 969; M., K. & T. Ry. Co. v. Bennett, 122 Okla. 102, 250 P. 1021; Protest of Murray, 140 Okla. 240, 285 P. 80.

As I view it, these decisions do not support this contention. To be sure the decisions state that appropriations for certain permanent improvements constitute "current expenses," but the question considered there is a vastly different one from the question involved here. Those decisions referred to section 9692, C. O. S. 1921, in which the Legislature provided:

"In all counties, the total levy for current expenses of each county, city, town, township or school district shall not exceed in any one year the following."

In other words, these decisions hold that in order to keep the appropriations within the prescribed boundaries, the appropriations for certain permanent improvements named in the various decisions must be considered current expenses, in order to hold the tax levy as low as possible, rather than to exclude them from the "current expenses" and add such amount to the maximum levy made for current expenses.

Under the rule laid down in the majority opinion, instead of $104,710, the board of education, if it found that much money on hand not otherwise appropriated, might appropriate $5,000,000 and call it "current expenses." This, in my judgment, was never the intention of the Legislature, and the decisions cited do not so hold.

The Supreme Court of Washington had a similar question under consideration in Sheldon v. Purdy, County Treas., 49 P. 228, when it said:

"The terms 'support' and 'current expenses' mean continuing, regular expenditures for the maintenance of the schools, and do not include the building of schoolhouses. * * * The building of new schoolhouses and the purchase of schoolhouse sites do not come within any authorized significance of 'current expenses'; neither do they come within any well-defined acceptance of 'support' for the common schools. Both the terms 'support' and 'current expenses', when applied to the common schools of this state, mean continuing regular expenditures for the maintenance of the schools. Building a new schoolhouse and purchasing a site, while at times necessary and proper, are unusual and extraordinary expenditures."

The Supreme Court of Kansas was considering this question in State of Kansas ex rel. C. Reed, Co. Atty., v. Commissioners of Marion County, 21 Kan. 419, when it said in referring to the phrase "county charges and expense" that:

"These phrases only include such charges and expenses as are incidental in conducting the business of the county government for the current year. It would be a strained construction of language to say that the erection of permanent county buildings, costing thousands of dollars, is the ordinary current expense of a county. * * * It is not a county charge in the meaning of said section 1 of Gen. Stat. 295, nor a part of 'current expenses' referred to in the fourth subdivision of section 16."

I concede that the board of education has the primary right, and it is its duty, to determine whether the appropriations asked for are needed, and in this duty it may not be superseded by the excise board, but when the board of education makes the request that the excise board approve an appropriation of $31,000 to buy land adjoining a school already built and another unusual sum of $73,710 to buy 40 acres of land in a remote section for the purpose of building a high school at some future date, when no item for this purpose was mentioned in the original budget, the excise board certainly has the authority, and it is its duty, to determine whether the purpose for which the funds are sought to be used comes within the designation "current expenses", and whether there is a surplus on hand out of which to make the appropriation.

I cannot agree that the appropriation sought to be made constitutes a supplemental appropriation within the contemplation of section 12680, O. S. 1931. It must be remembered that when the original budget was filed and the appropriations made for the year 1935-36, no mention was made whatever of any contemplated purchase of these two sites. In other words, these two items were not mentioned in the original budget. The word "supplemental," as defined by Webster's New International Dictionary (2d Ed.) is: "Serving to supplement.", and the word "supplement," in the same dictionary, is defined: "That which supplies a want or makes an addition; something already organized, arranged or set apart; something which completes or adds a finishing touch." Bal-

lentine's Law Dictionary, page 1252, defines the word "supplemental" as "added to supply a deficiency, or deficit."

The conclusion, generally, reached in the majority opinion appears to have been based largely upon the opinion of this court in State ex rel. Board of Education, City of Tulsa, v. Morley, 168 Okla. 259, 34 P. (2d) 258. I cannot agree that this opinion is authority for the conclusion reached in the majority opinion in the instant case, for the reason the exact question now being discussed was not before the court in that case. The opinion does not show whether the items for which the supplemental appropriations were requested were contained in the original budget, and we are not favored with the record so showing, but counsel for plaintiffs in error state in their brief that they have examined all the records pertaining to that case, and that every item for which additional or "supplemental" appropriations were requested in that case was listed and enumerated in the original budget.

It is further contended by plaintiffs in error here that the record in this case fails to show there is a surplus out of which this appropriation might be made. They admit that there is a "book surplus" shown; that is, that the books show an unexpended balance sufficient to cover the items for which appropriations are requested, but they contend that there was no showing that that was money on hand; that much of it represented unpaid taxes. If that be the case the excise board was correct in refusing to make the appropriation. The majority opinion quotes part of section 12680 showing some of the grounds or reasons justifying the supplemental appropriation, but it does not quote the second subdivision of that section which reads:

"If the financial statement herein required shall correctly reflect a surplus in revenue in any fund available for current expenses, **and the excise board shall so affirmatively** find, it may make supplemental appropriations to an amount not exceeding the aggregate of such surplus."

Under this statute, before the excise board could make such an appropriation or before mandamus would lie to compel it to do so, there must be an affirmative finding by that board that there is "a surplus in revenue." The laws enacted requiring boards of education to make, certify, and publish their budgets, were, no doubt, enacted in order that the taxpayers, who ultimately pay the bills, might have an opportunity in advance to know what their servants—the board of education—propose to spend during any current year. Likewise, the laws requiring the excise board to examine and approve these items were designed to give an opportunity to review the work of the board of education, and give any aggrieved citizen an opportunity to complain if he felt that the public moneys were not being properly handled and expended by the board of education. Some taxpayer might question the necessity of buying a 40-acre site for a high-school—he has that right if he wants to do so. I think this purpose and intent is salutary; it serves a good office, and should be strictly followed.

There is no hint that the board of education in the instant case is not composed of men of ability and high integrity; there is no suspicion that the board of education in this instance is not actuated by the best motives and are exerting every effort to best serve the public school system of Oklahoma City, but the same laws apply to boards composed of men of this character as would apply to boards of men of less honesty and integrity, and when the public funds to the extent of more than $100,000 are to be taken out of the school treasury for the purpose of buying large tracts of land upon which to build schools in the probably remote future, it is my opinion that it should be done only after such expenditure has been approved by a vote of the people, or the appropriations made by the excise board in the usual and orderly course of procedure. For these reasons, I most respectfully dissent.