## OKLAHOMA NATURAL GAS CO. v. STATE ex rel. VASSAR, County Atty.

No. 28447. March 19, 1940.

Rehearing Denied April 30, 1940.

*101 P. 2d 793.*

Underwood, Canterbury, Pinson & Lupardus, of Tulsa, for plaintiff in error.

M. D. Green and John E. M. Taylor, both of Oklahoma City, amici curiae.

Bill Vassar, County Atty., and Joe Young, Asst. County Atty., both of Chandler, for defendant in error.

DANNER, J. The defendant is a public service corporation. It had owned a vacant lot within the incorporated city of Chandler since the year 1924. Said lot was not necessary for the transaction and operation of defendant's business as such public service corporation.

In 1937 the county attorney instituted this action, in the name of the state, to

cause the title to be escheated. The trial court overruled the defendant's demurrer to the petition alleging the foregoing facts. The defendant excepted and elected to stand upon the demurrer, whereupon the court entered judgment escheating the lot, ordering same to be sold and distributing the proceeds of sale to the payment of costs, payment of $750 attorney's fee and $100 as an informer's fee, and the remainder to the state for the use and benefit of the common school fund. The defendant appeals.

It is first contended that section 2 of article 22 of the Oklahoma Constitution and the sections of our statutes in aid thereof were not designed to affect lands other than farm lands, and that therefore the lot in question, being within a city, was not subject to escheat. Said section 2, article 22, contains various prohibitions, exceptions and provisos, and for convenience and clarity in discussing the section we insert our own designations of those parts, in parentheses:

"(1st Prohibition) No corporation shall be created or licensed in this state for the purpose of buying, acquiring, trading, or dealing in real estate (Exception) other than real estate located in incorporated cities and towns and as additions thereto; (2d Prohibition) nor shall any corporation doing business in this state buy, acquire, trade, or deal in real estate for any purpose (1st Exception) except such as may be located in such towns and cities and as additions to such towns and cities, (2d Exception) and further except such as shall be necessary and proper for carrying on the business for which it was chartered or licensed; (3d Prohibition) nor shall any corporation be created or licensed to do business in this state for the purpose of acting as agent in buying and selling land; (1st Proviso) Provided, However, that corporations shall not be precluded from taking mortgages on real estate to secure loans or debts, or from acquiring title thereto upon foreclosure of such mortgages or in the collection of debts, conditioned that such * * * corporations shall not hold such real estate for a longer period than seven years after

acquiring such title: (2d Proviso) And Provided, Further, That this section shall not apply to trust companies taking only the naked title to real estate in this State as a trustee, to be held solely as security for indebtedness pursuant to such trust: (3d Proviso) And Provided, Further, That no public service corporation shall hold any land, or the title thereof, in any way whatever in this state, (Exception) except as the same shall be necessary for the transaction and operation of its business as such public service corporation."

Section 1636, O. S. 1931 (now repealed by H. B. 77, section 14, S. L. 1937, pp. 314, 317), under which the present action was brought, provided in part:

"The taking, holding or transferring of land in contravention of section 2, article 22, of the Constitution of the State of Oklahoma, is hereby declared to be illegal and unlawful, all such real estate in all such cases shall be subject to escheat to the state of Oklahoma, and the proceeds arising from the sale thereof by the state shall go to the permanent school fund of the state. * * *"

It is observed that the defendant's first proposition, as set forth above, is somewhat broader than the particular question before us. We are here dealing with a public service corporation, to which a separate proviso (the third) is specifically devoted.

There is no attempt herein to lay down any rules as to corporations other than public service corporations, and their ownership or holding of real estate within cities. That question is not decided. However, the defendant, a public service corporation, bases its argument that it is not forbidden to hold unnecessary city property on the predicate that corporations in general are not so forbidden. Therefore, in order to deal fairly with defendant's argument, we must either (a) rule upon the soundness of said predicate or (b) assume its soundness, for the purpose of reasoning only, and then determine whether defendant's conclusion is logically correct, as applied to a public service corpora-

tion. We prefer the latter, since corporations other than public service corporations are not involved in the particular case.

Assuming, for the sake of reasoning, that corporations in general are not prohibited from buying, acquiring, trading, dealing in, and consequently not prohibited from holding, city real estate not necessary and proper for corporate business, the same result would not follow as to public service corporations, to which a special proviso is devoted. It is set forth in the 3d proviso that no public service corporation shall hold any land, or the title thereof, in any way whatever in this state, except as the same shall be necessary for the transaction and operation of its business as such public service corporation. The exception is worded virtually the same as the 2d exception under the 2d prohibition, above, yet the 1st exception under that prohibition (concerning city property) is noticeably absent.

Under defendant's application of the section to a public service corporation (that is, that such corporations are not prohibited from owning unnecessary city property), the 3d proviso is rendered wholly surplusage, for the same result would have been achieved under the 2d prohibition, according to defendant's construction thereof,—a public service corporation being, nevertheless, a "corporation." It is argued by defendant that the total effect of the 3d proviso, relating to public service corporations, is merely to restrict such corporations from holding more country property than is necessary to their businesses, and that they may hold city property regardless of whether same is necessary. Then why have the 3d proviso? If the same result would have been achieved under the 2d prohibition (which we neither affirm nor deny), the 3d proviso is rendered redundant unless we can reasonably find some other use for it or explanation for its presence. Such an explanation, avoiding redundancy, has been suggested, but we do not find it acceptable.

It is a familiar rule of constitutional and statutory construction that sections are to be construed so as to give effect to every part thereof, that each provision of a section should be construed so as to harmonize with all the others, yet with a view to giving effect to each and every provision insofar as it shall be consistent with a construction of the section as a whole; the presumption being that every provision has been intended for some useful purpose. Finerty v. First Nat. Bank, 92 Okla. 102, 218 P. 859, 32 A.L.R. 1326; Protest of Carter Oil Co., 148 Okla. 1, 296 P. 485; Leach v. State, 17 Okla. Cr. 322, 188 P. 118; 16 C.J.S. 62, 63, 64. "Courts should avoid a construction which would render any portion of the Constitution meaningless." 16 C.J.S. 64, and cases cited in footnotes. Logically speaking, then, the result is this: If defendant's predicate or premise as to general corporations is correct, then that very assumption prevents the construction of the 3d proviso which defendant urges, while if the said predicate should be held incorrect, the entire foundation of defendant's argument would manifestly disappear.

Defendant next assails the constitutionality of section 1636, O. S. 1931, supra, under which section the action was brought, and contends that sections 1637 to 1640, O. S. 1931, 84 Okla. St. Ann. §§ 273 to 276, relating to procedure in such cases, must likewise be deemed to have become inoperative for the reasons hereinafter stated. The defendant then points out that we have several times held that the constitutional provision is not self-executing (State v. Prairie Oil & Gas Co., 64 Okla. 267, 167 P. 756; Parwal Investment Co. v. State, 71 Okla. 121, 175 P. 514), and that, therefore, if the statutory provisions are inoperative, the court lacked power to escheat the lot in question.

Section 8437, Rev. L. 1910, provided in part that the proceeds from the sale of real property escheated under section 2, article 22, of the Constitution should go to the public school fund of

the county in which the property was located, less costs and compensation to the informer. In the Parwal Case, supra, decided in 1918, this court held that section unconstitutional because section 2, article 11, of the Constitution provides that such proceeds shall go to the permanent state school fund. Then, in 1919, the Legislature amended section 8437, R. L. 1910, so as to turn said proceeds into the permanent school fund of the state (S. L. 1919, ch. 172, sec. 1), and the 1919 enactment subsequently appeared as section 1636, O. S. 1931, copied above. The defendant points out that section 8437, R. L. 1910, was the vital section in an act of the 1907-08 Legislature, comprising all of the sections in the 1931 statutes above named; and says that when said section was declared unconstitutional by the Parwal decision "the procedure for escheat was wholly wiped out, or rather declared nonexistent." In other words, that the remaining sections were rendered ineffective. The argument is made that "one does not vitalize or effectuate an unconstitutional statute by amending it," that "one cannot restore a procedure prescribed under an unconstitutional statute by merely amending the unconstitutional statute itself," and that therefore the 1919 amendment (sec. 1636, supra) was ineffective to "restore" constitutionality to the statutes.

We are not favorably impressed by this argument. The Parwal Case did not purport to hold unconstitutional any of the sections on escheat or escheat procedure except the one mentioned, which was shortly replaced by section 1636, supra, correcting the unconstitutional portion thereof. In the Parwal Case no defect was pointed out except the defect or defects removed by the amendment. (We pass over for the time being the matter of informer's fee, which will be mentioned later.) Furthermore, in the present connection there is considerable difference between the authority of the Legislature to amend statutes which have been wholly repealed, partly repealed, or held unconstitutional for some particular reason which may be remedied by legislation. In the latter case, as stated by the Montana court in State v. Silver Bow Refining Co., 72 Mont. 1, 252 P. 301, 304, "the roots and the 'main stock' are still alive and are grounded in fertile constitutional soil, and all that is necessary to cause the tree to flourish is scientific pruning or grafting." The following is said in 59 C. J. 854:

"As elsewhere shown, whatever views may prevail as to the authority of the Legislature to amend a statute which has been wholly repealed, it is held that the Legislature has authority to amend a statute which has been repealed in part only. And it has very generally been held that where a statute is unconstitutional in part only, it may be amended by striking out invalidating provisions or supplying others to make it conform to constitutional requirements."

It was said in State v. Silver Bow Refining Co., supra (252 P. 304):

"While there are authorities to the contrary, it is said by the text-writers that the 'better rule' and 'the decided weight of authority' is that an amendatory statute, which purports to amend a statute 'which for any reason has been declared invalid,' constitutes a valid enactment. Lewis' Sutherland on Statutory Construction (2d Ed.) 435; 36 Cyc. 1055; 25 R.C.L. sec. 158."

It is noticed that sections 1639 and 1640, O. S. 1931, 84 Okla. St. Ann. §§ 275, 276, provide for recovery of costs, including a reasonable attorney's fee and informer's fee, to be satisfied from proceeds of the sale. Although the Parwal decision (predicated on the attempted turning of the proceeds to the county school fund instead of the state school fund) incidentally included mention of the informer's fee, it is apparent that the main basis of the holding was that the provision in section 8437, R. L. 1910, which turned the proceeds into the county school fund was in violation of section 2 of article 11 of the Oklahoma Constitution directing said proceeds into the state school fund. We do not believe that allowance of a reasonable attorney's fee and reasonable informer's fee,

alone, would have been sufficient to invalidate the statute. Rather, we are inclined to the view that allowance of such items, as an incidental aid or incentive to enforcement of the constitutional provision, might reasonably be held within the legislative power without defeating the purpose of said section 2, article 11, Oklahoma Constitution. As stated in an analogous situation in Southern Express Company v. Commonwealth of Virginia, 92 Va. 59, 22 S. E. 809 (Aff. 168 U. S. 705, 18 S. Ct. 946, 42 L. Ed. 1212):

"If the Legislature possesses the right, as it does, to impose a fine or forfeiture, it has the power, as appurtenant to such right, to prescribe the proceeding or adopt the means deemed by it most likely to result in the enforcement of the fine or forfeiture. * * * This is not an appropriation or diversion of the fine to an object other than that to which the Constitution. dedicates it. On the contrary, all of the fine, beyond what the Legislature has deemed proper to set apart to stimulate the prosecution and secure the enforcement of the fine, goes to the literary fund, as required by the Constitution."

It should be borne in mind, however, that at present we are dealing only with the question of the constitutionality of permitting those items. As to the propriety of fees in the present case we shall have more to say later.

This brings us to the defendant's third proposition. This proceeding was instituted in 1937, under section 1636, O. S. 1931, supra. Before it was tried, section 1636 was repealed by H. B. 77, section 14, S. L. 1937, pp. 314, 317, and new sections adopted, but the procedural sections following section 1636 were not repealed. The defendant argues that the new law was in effect at the time the case was tried and that the court was without power to proceed under the former section. But the 1937 Act specifically provided that nothing therein should affect any actions pending at that time. We denied this same contention in Sheridan Oil Co. v. Superior Court of Creek County, 183 Okla. 372, 82 P. 2d 832, which see.

It was noticed in the beginning that the court allowed $750 attorney's fee and $100 informer's fee, out of the proceeds of the sale. The escheated property is a vacant lot. There is no indication anywhere in the record as to the value of the lot or the value of the services. The fees might easily exceed the proceeds of the sale and thus the state would receive no benefit whatever from the escheat, as contemplated by section 2, article 11, Constitution, supra. Therefore, if we should affirm this judgment in its present form, we would be in the position of holding the statutory provision for fees constitutional, yet countenancing an unconstitutional *application* of the statute. Furthermore, the trial court has set no minimum sale price, as required by section 1640, O. S. 1931, 84 Okla. St. Ann. § 276. We are of the opinion that the fees should not be set arbitrarily, but that they should bear some reasonable relationship to the value of the services and the amount realized at the sale, so that the permanent school fund may also participate in the proceeds, as contemplated by the Constitution. Of course, it is immaterial to the defendant where the proceeds go, and we are not basing this part of our ruling on any issue relating to whether the defendant may or may not raise the question. Nevertheless, public funds are vitally affected, and a constitutional provision has been called to our attention, which we may not with propriety ignore. We believe that in such case it is our duty, and certainly it is within our power, to cause the error to be corrected.

That part of the judgment overruling defendant's demurrer to the petition and entering judgment for the state because of the defendant's electing to stand upon its demurrer and refusing to plead further, is affirmed. The portion of the judgment setting the attorney's fee at $750 and informer's fee at $100 is reversed as to the amounts thereof, however, and the cause is remanded for further proceedings as to those items in accordance with the views herein expressed.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, OSBORN, CORN, GIBSON, HURST, and DAVISON, JJ., concur.