KNAPP v. STATE ex rel. COM'RS OF LAND OFFICE.

No. 34537.   March 4, 1952.

Rehearing Denied April 23, 1952.

*243 P. 2d 660.*

Bruce B. Potter, Blackwell, and W. K. Garnett and Chas. H. Garnett, Oklahoma City, for plaintiff in error.

R. H. Dunn and Sam Hill, Oklahoma City, for defendant in error.

DAVISON, J.  This is an appeal from a judgment of the district court of Kay county, Oklahoma, affirming on appeal and trial de novo, an appraisement of a 160-acre tract of land exclusive of improvements and modifying an appraisement of the improvements thereon, the same being in section 13 and a part of the state owned school lands under the control and management of the Commissioners of the Land Office, on whose relation the state is the defendant in error herein, and occupied by W. E. Knapp, the plaintiff in error here.

The original plaintiff in error, who was the appellant in the district court, first went into possession of the property under a lease from the proper territorial officers prior to statehood. He and his family had occupied it as a home since that time. He built a residence and numerous other buildings and improvements under the terms of what has come to be known as "preference right leases." On March 2, 1942, the Commissioners of the Land Office, in conformity with the provisions of 64 O. S. 1941 §244, forfeited his preference right to release the premises. From this action an appeal was taken to the district court of Kay county, Oklahoma. The judgment of that court affirming the order of forfeiture was subsequently affirmed by this court on appeal. Knapp v. State ex rel. Com'rs of Land Office, 196 Okla. 513, 166 P. 2d 86.

In 1946, proceeding toward the sale of the lands, the Commissioners of the Land Office caused an appraisement to be made, the result of which was to fix the appraised value of the land exclusive of improvements at $13,600 and the value of the improvements at $4,365. On appeal and trial de novo in the district court, the appraised value of the land was affirmed and the value of the improvements was modified and fixed at $7,500. From that judgment both parties appealed to this court, and after the death of Mr. Knapp the cause was revived in the name of his administrator.

In order to get a clear picture of the situation, it is necessary to outline some of the background and legislative acts affecting lands of this character. Being in section 13, the tract here involved was, by the provisions of the Enabling Act, reserved and granted to the state for the use and benefit of the University of Oklahoma and other educational institutions (Enabling Act, §8). It was also provided in said act that the same might be sold or leased under rules and regulations to be prescribed by the Legislature subject, however, to certain provisions protecting the rights of occupying lessees. (Enabling Act, §10.) The lands in which the various schools of the state have had a beneficial interest and the occupying lessees thereof, who also played a substantial part in the settlement and development of the state, have been the subjects of much subsequent legislation. Most of those laws were analyzed and discussed in the opinion in the case of Magnolia Petroleum Co. v. Price, 86 Okla. 105, 206 P. 1033. Therein it was concluded that, as to such a lessee:

"The state is bound by the terms of the Constitution and by the terms of the grant to protect him in his preference right to re-lease if the land is re-leased, and the preference right to purchase, at the time of sale, if the land is sold. This is as far as the state is obligated to the lessee without violating the conditions of the grant itself, the uppermost purpose in the grant being to protect the school, educational, and public building funds, for which purposes the land was granted to and accepted by the state."

Then, in order to provide a means whereby the state could manage its lands in a more orderly manner, the Legislature made provisions for termination of those preference rights and the protection of the lessee in his property which had been built or placed on the leased land during his tenure. It was under the provisions of 64 O.S. 1941 §244, that the forfeiture was had in the instant case, which was affirmed in Knapp v. State ex rel. Com'rs of Land Office, supra. It will be noted that the forfeiture provided by this section of the statutes is of "the agricultural lessee's preference right to re-lease," and not of any other of his rights. In that same statutory section, provision is made for the sale of the lessee's improvements for the purposes of reimbursing him and of making it possible for the state to again lease the land or sell it without the complications that could arise otherwise. The Commissioners of the Land Office did not, however, sell the improve-

ments. Two other courses remained open. The lessee could remove the improvements under the provisions of 64 O. S. 1941 §249, or the land and improvements could be sold together if the conditions embodied in the proviso of section 10 of the Enabling Act were met. Therefore, lessee was vitally interested in the appraisement of the land and the appraisement of the improvements for sale purposes and was a "person affected thereby" and entitled to appeal therefrom as provided in 64 O. S. 1941 §250. The contention of defendant in error that, because a sale of the improvements belonging tc the plaintiff in error was not now intended, overlooks the specific provisions of the original grant of said lands to the state (Enabling Act), relative to sales of such lands, and is not tenable.

The next proposition is the contention of the plaintiff in error, W. E. Knapp, that he "is entitled to have the land appraised for sale purposes at the raw land value at the time he went into possession and started his improvement of the farm" (1902). We need not go any further than the testimony of plaintiff in error himself to determine the fallacy of that argument. Mr. Knapp, in contending that the value of the land without improvements should be fixed at $2.50 per acre, testified that that value was placed upon the land by "the Proclamation of Grover Cleveland, the President, just a few weeks prior to the opening of this Cherokee Strip" (1893). If it was intended that, at the time of a future sale, that figure was to be used as the fixed value of the land, it was a useless thing to include instructions and requirements as to an appraisement of the land, in the proviso of section 10 of the Enabling Act in 1906, which act is recognized as the actual grant of the land to the state. Therein it is provided that:

"before any of said land shall be sold, as provided in sections nine and ten of this Act, the said lands and improvements thereon shall be appraised by three disinterested appraisers, who shall be non-residents of the county wherein the land is situated, to be designated as the Legislature of said State shall prescribe, and the said appraisers shall make a true appraisement of said lands at the actual cash value thereof, exclusive of improvements, and shall separately appraise all permanent improvements thereon at their fair and reasonable value."

In construing a constitutional or statutory enactment, there is a presumption that every provision has been intended for some useful purpose. Oklahoma Natural Gas Co. v. State ex rel. Vassar, 187 Okla. 164, 101 P. 2d 793, and cases therein cited. It would be just as reasonable to argue that the value of the improvements should be appraised at their value when first built or placed on the premises. It can be readily seen that the purpose and intent of the above-quoted part of the section of the Enabling Act was, in the event of a sale of the land, to fix a standard by which each party would receive that portion of the price paid by the purchaser to which he or it would be equitably entitled. In most cases it would be difficult, if not impossible, for appraisers appointed in 1946 to fix the actual cash value of lands as of 1902.

In the former case between these two parties, cited supra, plaintiff in error made the same contention as to the appraisal for determining the lease value of the land, that he is now making as to the appraisal for sale purposes. Therein this court concluded that the appraisal should fix the value at the time thereof and not as of some previous time.

In the briefs of plaintiff in error, it is strenuously urged that the value of improvements to which a lessee is entitled as against the landlord includes everything which enhances the value of the property, such as clearing, putting into cultivation, terracing, etc. Cases are cited which are generally of one or more of three classifications, viz.: those founded on implied contracts;

those wherein the landlord is unjustly enriched; and those in which the occupant is an occupying claimant under tax sale laws. In the instant case a different situation obtains. The lands here involved must be dealt with in strict compliance with the lease contract, the conditions of the grant to the state (Enabling Act), and the provisions of the State Constitution and legislative acts authorized by the Enabling Act. Also, it must be borne in mind that the primary object of the grant of these lands to the state was assistance to the schools and public institutions thereof.

The judgment of the trial court is in harmony with these conclusions and the evidence adduced at the trial and is therefore affirmed.

HALLEY, V. C. J., and CORN, GIBSON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.