**KIOWA COUNTY EXCISE BOARD,**
Plaintiff in Error,
v.
**ST. LOUIS–SAN FRANCISCO RY. COMPANY, a corporation, Defendant**
In Error.
No. 37194.

Supreme Court of Oklahoma.
May 8, 1956.

Dissenting Opinion July 31, 1956.

Lloyd Reeder, County Atty., Kiowa County, Hobart, Mac Q. Williamson, Atty. Gen., J. H. Johnson and James C. Harkin, Asst. Attys. Gen., for plaintiff in error.

G. E. Bailey, St. Louis, Mo., Satterfield, Franklin & Harmon, Oklahoma City, for defendant in error.

Charles B. Duffy, Ponca City, for Ponca City Board of Education, amicus curiæ.

Walter A. Lybrand, Oklahoma City, for Oklahoma City Board of Education, amicus curiæ.

Claude H. Rosenstein, Tulsa, for Tulsa Board of Education, amicus curiæ.

JOHNSON, Chief Justice.

The Court of Tax Review sustained a protest by the St. Louis-San Francisco Railway Company, a corporation, against 1.61 mills of a total ad valorem tax levy of 25 mills made to finance the general fund of Independent School District No. 4 of Kiowa County for the fiscal year ending June 30, 1956. The Kiowa County Excise Board appeals.

The facts are not in dispute: A 25 mill levy was made for the general fund of the school district and to the extent of 5 mills thereof involves the emergency levy of 5 mills mentioned in subsection (d) of Section 9 of Article 10 of the Constitution as amended on April 5, 1955. The said subsection (d) provides:

"In addition to the levies hereinbefore authorized, school districts may make an emergency levy in an amount not to exceed five (5) mills on the dollar valuation of the taxable property in such district when approved by a majority of the electors of the district voting on the question at an election called for such purpose. This emergency levy shall provide only sufficient additional revenue to meet the need for the district each fiscal year. Need shall be average daily attendance of all pupils for the preceding year, plus the average annual increase, if any, for the preceding three (3) years, multiplied by the per capita cost index minus the legal current expense in the school district for the preceding year. The per capita cost index is set at Two Hundred Fifty Dollars ($250.00) for the fiscal year ending June 30, 1956, and thereafter shall be increased or decreased by the State Board of Education in proportion to the increase or decrease in the per capita income of Oklahoma citizens, unless otherwise provided by law."

After April, 1955, the Legislature adopted House Bill No. 964, Chapter A, Title 70 Oklahoma Session Laws 1955, which amends 70 O.S.1951 § 4–40 to provide:

" * * * In determining the eligibility of the school district to make an emergency levy under the provisions of Section 9(d) of Article X, Oklahoma Constitution, as amended, the legal cur-

rent expense of the district shall be all the expenditures from the general fund of the district during the preceding year, except (1) expenditures for transportation of pupils; (2) capital outlay; (3) debt service; and (4) the amount appropriated from any previous emergency levy; and the per capita cost index for the fiscal year ending June 30, 1956, shall be Two Hundred Fifty Dollars ($250.00), and thereafter shall be increased or decreased by the State Board of Education in proportion to the increase or decrease in the per capita income of Oklahoma citizens. * * *"

Herein, under a determination of the eligibility of the school district there was made a 5 mill emergency levy based on the provisions of the statute, supra, and the prescribed formula of the Constitution, there being used a figure in the calculation representing all the expenditures from the general fund of the district during the preceding year but not including the expenditures for transportation of pupils.

The Court of Tax Review sustained the protest of the levy in the amount of millage that the 5 mill levy would be reduced by the inclusion of expenditures for transportation of pupils, under an application of the formula set out in the Constitution and without consideration of the statute, supra.

The Court of Tax Review sustained the protest under a holding that the legislative act, supra, is invalid; it being at variance and in conflict with the provisions of the constitutional amendment, supra, insofar as the legislative act provides that "the legal current expense" of a school district shall not include "expenditures for transportation of pupils", in determining the eligibility of a school district to make the emergency levy under the provisions of the Constitution.

The Kiowa County Excise Board and others, amici curiae, here contend the judgment of the court is erroneous as based on a holding that the legislative act is, in part, invalid.

It is argued that the term "legal current expense" appearing in the constitutional provision here involved, nor the included term "current expense," has no one generally accepted, ordinary meaning, and that the legislature is authorized to define such term for the purposes involved in said provisions of the Constitution, or to declare a legislative construction of the provisions of the Constitution that are of doubtful meaning.

It is suggested the term "current expense" as used in field of accountancy is given a variety of meanings according to the contingencies as arise in a business operation and in municipal operations; that in this state some school districts have expenditures for transportation of pupils and some districts do not transport pupils, and in this view the wording of the portions of the Constitution under consideration suggests an intendment of ancillary legislation to define "current expense" so as to give the constitutional formula for the levy of taxes of the same effect to all school districts. We are cited expressions of this court from various cases, such as:

"A legislative construction of Constitution is deemed highly persuasive, particularly where amendment is construed by Legislature that framed it." State ex rel. Kerr v. Grand River Dam Authority, 195 Okl. 8, 154 P.2d 946, 947.

"Where the meaning of a constitutional provision is doubtful or open to question, when considered in connection with other provisions of the Constitution, the construction placed upon it by the Legislature is entitled to great weight." Board of Com'rs of Marshall County v. Shaw, 199 Okl. 66, 182 P.2d 507, 513.

"Acts of the Legislature will not be held invalid unless they are clearly in conflict with some constitutional provision, and that all doubt, where there is doubt, will be resolved in favor of the constitutionality of the act. * * *" Excise Board of Ottawa County v. St.

Louis-San Francisco Ry. Co., 176 Okl. 641, 57 P.2d 261, 265.

We do not regard the term "legal current expense" or "current expense" when used in relation to municipal financing as being of doubtful or uncertain meaning. Since statehood, the legislature in various acts has used the term as synonymous with, or of clear reference to, the expenditure from the general fund of a municipality and there have been like expressions by the courts in the interpretation of such acts.

70 O.S.1951 § 1-19, in part read:

"The General Fund of any school district shall consist of all moneys which may legally be used for current expense purposes within a fiscal year, * * *."

In Excise Board of Oklahoma County v. Board of Education, 178 Okl. 545, 61 P.2d 693, 695, 62 P.2d 986, it was said:

"It has been the consistent holding of this court that current expense includes any expenditure for which a tax is authorized to be levied by the Legislature for any current fiscal year, other than the taxes authorized by sections 10 and 27, of Article 10, of the Constitution. [Citing cases.]"

Note said sections 10 and 27 authorize special levies, after approval by vote of the people and respectively for the erection of buildings and creation of sinking fund in purchase and repairs of public utilities.

We are of the opinion that the wording of the portions of the Constitution under consideration is clear and unambiguous, and further that said provision of the Constitution is an enactment complete in itself and self-executing. It provides a right of levy and states clear rules for the attainment of the right given, and accordingly appears to be effective and operative without an aid of other or further legislation.

The act of the Legislature, supra, contains the expression "the legal current expense of the district shall be all the expenditures from the general fund of the district during the preceding year, except (1) expenditures for transportation of pupils."

Beyond question, expenditures for transportation of pupils are in fact expenditures from the general fund of the district and a current expense of the district. The exception that is declared in the legislative act is of effect to deny such fact and serves a purpose only of enlarging the eligibility of a school district to make an emergency levy under the provisions of Section 9(d), Article X of the Constitution.

We do not regard the terms of the legislative act as being of such effect as to declare a legislative construction of the said provision of the Constitution or to define the terms of the constitutional provisions.

■ It is apparent that to give effect to the terms of the legislative act would constitute a transgression of the Constitution. The legislature has no power to abridge or extend a provision of the Constitution when the same is self-executing, by so-called construction or otherwise.

■ We hold the legislative act transgresses the Constitution and is invalid as to the provision thereof that excepts expenditures for transportation from calculations in determining eligibility of the school district to make the emergency levy authorized by the Constitution.

■ The judgment of the Court of Tax Review is affirmed in so far as it pertains to that portion of the tax levy that will be reduced by the inclusion of the expenditures for transportation as legal current expense in a calculation under the formula set out in the Constitution.

The trial court sustained the protest as to a portion of the tax levy under a holding that the constitutional amendment, supra, as mentions "average daily attendance" as a factor in calculation of levy refers to resident and legally transferred pupils only and does not include "tuition pupils."

A figure of 602 was used as the "average daily attendance" factor in computing the

levy made for the school district. It was shown that eight pupils had attended the school who were not residents of the district and had not been transferred thereto by another district. These eight pupils were admitted to the school upon their payment of tuition, each in an amount equal to the per capita cost of education in such district. There is no question that such attendance in the school was authorized. 70 O.S.1951 § 1–16. The figures used in calculation and the calculations as based thereon are not in dispute.

The trial court ordered reduction of levy in the proportion that the figure of 594 be used instead of 602 as the "average daily attendance" factor in computing the levy.

The County Excise Board here contends the court erred in its interpretations of the applicable constitutional provision, and accordingly that the judgment last above mentioned is erroneous.

The constitutional provision under consideration clearly prescribes the factors to be used in computing the levy for a school district and states one of the factors to be "the average daily attendance of all pupils for the preceding year."

In the entire constitutional section we find no language to suggest any intendment to give a limitation of meaning to the words "all" or "all pupils" or a meaning otherwise than is expressed by the words. The word "all" clearly denotes the whole number of, or every. The term "all pupils" in connotation with "daily attendance" clearly signifies the whole number of pupils in daily attendance.

We are of the opinion that the wording of the portion of the Constitution under consideration is clear and unambiguous.

The protesting tax payer, the railway company, defendant in error herein, suggests the existence of various statutory enactments containing the term "average daily attendance" and the consistent administrative interpretation of the said term as including only resident and transferred pupils. Attention is directed to certain provisions in the State Aid Law, Article 18 of the Oklahoma School Code, 70 O.S.1951 §§ 18–4 and 18–5.

Under Article 18, State Aid, 70 O.S.1951 § 18–6, it is provided:

"No pupil shall be counted in the average daily attendance of any district *for the purpose set out in this Article,* unless said pupil is a legal resident of said district or has been legally transferred thereto; * * *." (Emphasis ours.)

Thus it appears the term "average daily attendance" is defined for the purpose set out in the State Aid Law.

Attention is also directed to various statutes providing for apportionment of revenues collected by the State to ultimate use of school districts and based on average daily attendance and to the administrative interpretations and practices thereunder.

Attention is directed to statutory provisions regarding apportionment of intangible tax and of school land earnings, and which provide apportionments to schools according to number of resident children of scholastic age.

We do not regard these statutory expressions or the administrative practices thereunder as anywise related to the intent and purpose expressed in the provisions of the Constitution which is to authorize a levy against the property of a school district under circumstance of need determined under the formula set forth.

The object of construction, when applied to the Constitution, is to give effect to the intent of its framers and of the people adopting it, and where the language of the constitutional provision is not ambiguous or of uncertain or doubtful meaning, such intent is to be found in the instrument itself. Latting v. Cordell, 197 Okl. 369, 172 P.2d 397.

We hold the constitutional expression, "the average daily attendance of all pupils" means literally all pupils, and that the trial court erred in its interpretation of the provision as excluding the "tuition"

pupils who beyond question were in lawful attendance.

It is idle to suggest that the word "lawful" must be interjected into the constitutional provision (after the word "all" and before the word "pupils") to render it fully meaningful and effective, for the presumption accompanies the school officials that pupils will not be permitted in attendance unless authorized by law.

■ The judgment of the Court of Tax Review is reversed in so far as it affects the tax levy calculated with an exclusion of "tuition" pupils as pupils in attendance.

It is the order and judgment of this court that the tax levy here involved and as made by the above mentioned County Excise Board be reduced as to the millage necessary to conform to that part of the judgment of the Court of Tax Review that is herein affirmed.

WILLIAMS, V. C. J., and CORN, HALLEY, BLACKBIRD and JACKSON, JJ., concur.

WELCH, DAVISON and HUNT, JJ., dissent.

DAVISON, Justice (dissenting in part).

I dissent to that part of the majority opinion in this case affirming the judgment of the Court of Tax Review because I am thoroughly convinced that the meaning of the term "legal current expense" as used in Const. Art. X, § 9(d) as amended 1955 is so doubtful and open to question when considered in connection with other constitutional and statutory provisions that the Legislature was authorized to define it by enacting House Bill No. 964 Act of the Twenty fifth Oklahoma Legislature, 70 O.S. 1955 Supp. § 4–40. The applicable rule of law is quoted in the majority opinion as expressed in the case of Board of County Commissioners of Marshall County v. Shaw, 199 Okl. 66, 182 P.2d 507.

If the phrase "legal current expense" was intended to mean all general fund expenditures, it would have been much simpler and definite to have used the latter phrase in the constitutional amendment. Therefore, the phrase used must have been intended to have a different meaning. In the School State Aid Law, 70 O.S.1955 § 18–1 et seq., we find the use of a very similar phrase. In section 18–4 par. 1b, provision is made for "all other legal items of expenditure from the General Fund exclusive of teachers' salaries, transportation, and capital outlay." When the word "legal" is given the meaning of contrary to illegal, its use in the constitutional amendment is merely surplusage because all expenditures which are made must be legal in that sense. " 'Courts should avoid a construction which would render any portion of the constitution meaningless.' " Oklahoma Natural Gas Co. v. State ex rel. Vassar, 187 Okl. 164, 101 P.2d 793, 796; Knapp v. State ex rel. Commissioners of Land Office, 206 Okl. 363, 243 P.2d 660. At this point, then, we are confronted with the question—— "What was the intended meaning of the word 'legal' as used in the constitutional amendment under consideration?" It could have meant those current expenses "required by law" as distinguished from those "required by the rules and regulations of the State Board of Education." With such an interpretation of the word, an examination of the provisions of articles 4, 9, and 18 of Title 70 O.S.1951 and 1955 Supp. leads to the conclusion that "the meaning of [the] constitutional provisions is doubtful [and] open to question, when considered in connection with other provisions of the Constitution" and statutes and "the construction placed upon it by the Legislature is entitled to great weight", Board of County Commissioners of Marshall County v. Shaw, supra [199 Okl. 66, 182 P.2d 513], "particularly where amendment is construed by Legislature that framed it." State ex rel. Kerr v. Grand River Dam Authority, 195 Okl. 8, 154 P.2d 946, 947.

Another meaning which could equally well be applied to the word "legal" is that of "as defined by law" which would amount

to a direct authorization by the constitutional amendment itself of the Legislature to enact a definition statute. In either of the two latter situations House Bill No. 964, acts of the Twenty fifth Oklahoma Legislature, 70 O.S.1955 Supp. § 4–40, was valid and constitutional. It is my opinion that said defining statute is valid and that, being so, the Court of Tax Review was in error in striking it down and sustaining the protest in so far as it affected the method of computing the need for an emergency levy under the provisions of Const. Art. X, § 9, subsec. (d) as amended on April 5, 1955.

I therefore respectfully dissent to that part of the majority opinion affirming judgment of the Court of Tax Review. In all other respects I concur.

I am authorized to state that WELCH and HUNT, JJ., concur in this dissent.