ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, Plaintiff in Error,

v.

McCURTAIN COUNTY, OKLAHOMA, EXCISE BOARD, Defendant in Error.

No. 39063.

Supreme Court of Oklahoma.

May 31, 1960.

G. E. Bailey, St. Louis, Franklin & Harmon, Oklahoma City, for plaintiff in error.

Lewis T. Martin, County Atty., McCurtain County, Idabel, for defendant in error.

BERRY, Justice.

During the fiscal year ending June 30, 1959, Idabel Independent School District No. 5, hereafter referred to as "School District", purchased equipment and supplies for its Physics Department at a cost of $10,333.79, which purchase was made in order to replace equipment and supplies used in said Department. School District treated the amount of this purchase as "current expense". Plaintiff in error, St. Louis-San Francisco Railway Company, hereafter referred to as "protestant", contends that said purchases should have been treated as "capital outlay". Prior to said purchase, School District purchased and paid for personal property such as chairs, typewriters, etc., at an aggregate cost of $4,668.25, which purchases were treated as current expenses. Protestant contends that not less than $3,000 of said cost should have been treated as capital outlay. All of the referred-to property was paid for by warrants drawn on School District's "General Fund".

As we understand the facts, School District showed on a form prepared by the State Examiner and Inspector, for use by all school districts, which form was denominated "School District 1959–1960 Estimate of Needs and Financial Statement of the Fiscal year 1958–1959", that of tax revenue accruing to School District's General Fund, $3,000 would be expended for capital outlay and the balance ($447,073) for current expense. The form makes clear that expenditures from School District's General Fund should be treated as either current expense or capital outlay. In the form, under the heading "Classification of Expenditures for Current Expense Purposes", these items are listed under the heading "Purposes": 1. Administrative Services; 2. Instructional Services; 3. Attendance and Health Services; 4. Transportation Services; 5. Operation of Plant; 6. Maintenance of Plant; 7. Fixed Charges; 8. Food Services and Student Body Activities; 9. Community Services. School District did not complete the last-referred-to portion of the form and only showed that "Net Amount of Appropriations" for General Fund purposes was "1. Current Expense, $447.073.00" and "2. Capital Outlay, $3,000.00". School District filed this form with defendant in error, McCurtain County, Oklahoma, Excise Board, hereafter referred to as "protestee".

In its protest filed before the Court of Tax Review, protestant stated in substance that the expenditure of $10,333.79 should have been treated as a capital outlay and not as current expenses, and if so treated School District's current cash balance in its General Fund would be increased by said amount which would reduce by 4.51 mills the levy certified by protestee; that not less than $3,000 of the $4,668.25 in purchases should have been considered as capital outlay and if so considered, said item would have been exhausted before the $10,333.79 purchase was made.

From order of the Court of Tax Review denying said protestant's protest, protestant appeals.

Paragraph 20 of 70 O.S.1951 § 2A–4 reads as follows:

"20. Prescribe all forms for school district and county officers to report to the State Board of Education where required. The State Board of Education shall also prescribe a list of appropriation accounts by which the funds of school districts and separate schools shall be budgeted, accounted for and expended; and it shall be the duty of the State Examiner and Inspector in prescribing all budgeting, accounting and reporting forms for school funds to conform to such lists. The provisions of Chapter 10, Title 68, Session Laws 1943, to the contrary are hereby superseded, set aside and held for naught."

The State Board of Education, hereafter referred to as "Board", pursuant to alleged authority granted by the above quoted statute, promulgated "Bulletin No. 145–K", which reads as follows:

"Maintenance of Plant consists of those activities that are concerned with keeping the grounds, buildings, and equipment at their original condition of completeness of efficiency, either through repairs or by replacements of property (anything less than replacement of a total building.)

"Concerning equipment, expenditures for repairs and for piece-for-piece replacements are recorded under Maintenance of Plant, regardless of the relative value of the replaced item of equipment and its replacement. By piece-for-piece replacement is meant the replacement of a complete unit of equipment by another complete unit of equipment serving the same purpose in the same way. For example, if a manual typewriter was replaced by an electric typewriter, the entire cost of the electric typewriter would be recorded under Maintenance of Plant.

\* \* \* \* \* \*

"Expenditures for the initial or additional purchase of equipment are recorded under the 1000 Series, Capital Outlay."

The parties agree that in treating the purchase price of equipment and appliances for its Physics Department as an expenditure for "Maintenance of Plant", therefore, as current expense, School District followed the directive set forth in the above quoted bulletin. Protestant contends, however, that (1) the cited statute cannot properly be construed as authorizing Board to designate a capital expenditure as a current expenditure; that (2) if the statute is so construed, same is unconstitutional in that legislative power is granted Board in violation of Art. IV of the Okla.Const.

In support of the contention first above referred to, protestant cites Kiowa County Excise Board v. St. Louis-San Francisco Ry. Company, Okl., 301 P.2d 677, and Osage County Excise Board v. Missouri-Kansas-Texas Railroad Co., Okl., 340 P.2d 217.

In the first cited case we held in substance that the Legislature was without authority to enact legislation to the effect that the phrase "legal current expense" as employed in Art. X, Sec. 9(d) of the Okla.Const., relative to an emergency levy for school purposes, did not include current expense for the transportation of pupils.

We held in substance in the last above cited case that capital outlay did not represent "legal current expense" within the purview of Art. X, Sec. 9(d), supra. Protestant stresses that in said case [340 P.2d 219] we said that "The term 'legal current expense' is not of doubtful meaning when considered alone. It is capable of exact definition;" that the quoted phrase and the phrase "Capital outlay" according to popular usage "approach being mutually exclusive of each other."

Protestee admits that the cited cases represent authority sustaining the proposition that Board is powerless to change the clear meaning of the Constitution by giving words or phrases used therein an un-

natural definition. Protestee contends, however, that the cases cited by protestant are not in point; that in view of the fact that the expenditures in any event were payable from the General Fund and since the phrases "current expense" and "capital outlay" are not used in an applicable provision of the Constitution or statutes, it was within the power and province of Board to provide that expenditures of personal property purchased to replace like property should be treated as "Maintenance of Plant", which expenditures are classified by Board as current expenditures; that in any event the error complained of by protestant could have been cured by a supplemental appropriation made pursuant to 68 O.S.1951 § 292, as construed in Excise Board of Oklahoma County et al. v. Board of Education of Oklahoma City, 178 Okl. 545, 61 P.2d 693, 62 P.2d 986.

Protestant's contention that the questioned purchases represented a capital outlay is bottomed on argument to the effect that "Any business or professional man knows that the purchase of furniture and equipment, such as desks, tables, chairs, deep freezes, and sewing machines, are capital expenditures, and must be treated as such even though they are replacements of items already in use." In support of said contention, protestant refers to the fact that for income-tax purposes expenditures for furniture and equipment are considered as capital and not as current expenditures. Protestant concludes that Board was therefore without authority to say that expenditures for personal property to replace like property was a current expense and not a capital outlay. It is significant that protestant does not contend that the bulletin of Board bearing on said matter serves to change the meaning of applicable constitutional or statutory provisions.

The record does not show Board's reason for, in effect, classifying as current expense expenditures that are generally considered to be capital expenditures. We assume that in making said classification Board was cognizant of the fact that both of the referred-to expenditures are payable on warrants drawn on the General Fund and probably concluded that it is immaterial whether the cost of replacing personal property is treated as a current expense or capital outlay where all concerned know of the classification and are therefore not misled. It is not suggested that the classification misled Board or interested taxpayers. The bulletin in controversy was promulgated several years prior to School District's filing its estimate of needs and financial statement with protestee and all interested parties were charged with knowledge that under Board's classification a portion of the estimate for current expense could be used to purchase personal property to replace like property. Moreover, if Board had not made the classification in controversy, School District, in its estimate of needs, would no doubt have increased its estimate for capital outlay to a figure which would have included the cost of the questioned purchases and accordingly would have reduced its estimate for current expense. We assume that such an estimate would have been approved by protestee in view of the fact that expenditures made under either classification are payable out of the General Fund. It is entirely possible that in making said classification the Board may have been influenced by the fact that school districts are not subject to either the Federal or State income-tax levy and for said reason (and for other reasons) do not keep their records in such a manner as to show depreciation sustained on depreciable assets or the gain or loss sustained on the sale or other disposition of such assets.

It is apparent to us that the primary purpose of the classification set forth in Board's bulletin was to create a uniform rule of accounting that would serve as a guide for all school districts in preparing their estimate of needs and financial statements which are filed with County Excise Boards and that in creating said classification Board did no more than "prescribe a list of appropriation accounts by

**900**

which the funds of school districts and separate schools shall be budgeted, accounted for and expended." In so proceeding, Board acted within the authority granted by para. 20, 70 O.S.1951 § 2A–4, supra. As applied to the facts of this case, the regulation is reasonable and, moreover, did not serve to mislead protestee nor interested taxpayers.

We turn to protestant's second contention to the effect that if the last above cited statute is construed in accordance with protestee's contention, said paragraph violates Art. IV of the Okla.Const. We are unable to agree with this contention. The questioned bulletin as pointed out constitutes a directive to school districts to use a uniform system in budgeting, accounting for and expending tax revenues apportioned to their General Fund. This directive, under the facts of this case, does not constitute a grant of legislative authority to Board in violation of the Constitution. In the fourth and fifth paragraphs of the syllabus to Bailey v. State Board of Public Affairs et al., 194 Okl. 495, 153 P. 2d 235, 236, this is said:

"4. While the Legislature may not delegate to others the power to make a law, which involves a discretion as to what it shall be, it may confer upon executive officers discretion as to its execution, to be exercised under and in pursuance of the law.

"5. The legislature has a wide discretion as to the minuteness with which the policy and standard may be expressed in a statute which confers upon executive officers discretion in carrying out the statute, and the courts should be reluctant to interfere with such discretion."

The order of the Court of Tax Review is affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and JACKSON and IRWIN, JJ., concur.

WELCH and JOHNSON, JJ., concur in result.