## WEST v. BOARD OF COM'RS OF CADDO COUNTY.

No. 7507—Opinion Filed June 6. 1916.

Rehearing Denied June 20. 1916.

(158 Pac. 354.)

**Counties—County Funds—Interest—Liability of Treasurer.**

County funds received by the county treasurer remain the money of the county until paid out according to law, and the treasurer having charge thereof is prohibited by law from receiving for his own private use any interest for the use of said funds, and any interest collected by him for the use of said money belongs to the county and an action can be maintained therefor against the county treasurer by the board of county commissioners to recover the same.

(Syllabus by Hooker. C.)

Error from District Court. Caddo County: Will Linn. Judge.

Action by the Board of County Commissioners of Caddo County. Okla.. against Ed

M. West. Judgment for plaintiff, and defendant brings error. Affirmed.

A. J. Morris, for plaintiff in error.

Grover C. Wamsley, Co. Atty., and Theodore Pruett. Asst. Co. Atty., of Caddo County, for defendant in error.

Opinion by HOOKER, C. This is a suit by the board of county commissioners of Caddo county against Ed M. West, and it is alleged that during the time that the said Ed M. West was county treasurer of Caddo county, Okla., the Anadarko State Bank, in addition to the legal rate of interest paid the county on the money deposited with it by the said West. as county treasurer, paid to the said Ed M. West an additional 2½ per cent., which the said Ed M. West accepted and appropriated to his own use; that the said Ed M. West had no legal right to accept said money or to retain the same. It is claimed by him that the relation of debtor and creditor existed between him and the county, and that the money in his hands did not belong to the county; hence the interest paid to him by the bank for the use of said money could not be lawfully claimed by the county.

Section 1540 of the Rev. Laws of 1910, which was in force in this state at the time of the transactions here. is legislative recognition of the fact that the money collected by the county treasurer does not belong to him, for this statute directs him what to do with the money, and directs what interest shall be paid to the county by the bank for its use, and that, if no bank in the county will pay that per cent. to the county treasurer for the use of the money. the county treasurer is directed to deposit the same in a bank which will, and said statute plainly evidences an intention for the county treasurer to act as the agent or trustee of the county in the management and handling of said funds.

The Constitution of this state (art. 10. sec. 11) is as follows:

"The receiving, directly or indirectly, by any officer of the state, or of any county, city or town. or member or officer of the Legislature. of any interest, profit, or perquisites, arising from the use or loan of public funds in his hands or moneys to be raised through his agency for state. city, town. district. or county purposes shall be deemed a felony. Said offense shall be punished as may be prescribed by law. a part of which punishment shall be disqualification to hold office."

Subsequent to the adoption of the Constitution the Legislature of the state enacted the following law:

"Every public officer of the state or any county, * * * and every other person receiving any money or other thing of value on behalf of or for account of this state or

any department of the government of this state * '* * who either:

"First. Appropriates to his own use. or to the use of any person not entitled thereto, without authority of law, any money or anything of value received by him as such officer, clerk, or deputy, or otherwise, on behalf of this state, or any subdivision of this state, or the people thereof, or in which they are interested; or,

"Second. Receives, directly or indirectly, any interest, profit or perquisites, arising from the use or loan of public funds in his hands or money to be raised through his agency for state, city, town, district or county purposes; or,

"Third. * * * or,

"Fourth. * * * or,

"Fifth. Willfully omits or refuses to pay over to the state, city, town, district or county, or other officers or agents authorized by law to receive the same, any money or interest, profit, or perquisites arising therefrom, received by him under any duty imposed by law so to pay over the same, shall, upon conviction thereof, be deemed guilty of a felony.* * *"

Rev. Laws 1910, sec. 2581.

By reference to these provisions of the law above quoted it is apparent that it was the legislative intent to prevent county treasurers and all public officials from speculating with public funds in their hands or from receiving any moneys for the management and handling thereof, save and except the salary of the office provided for by law. It is clear that it was the legislative design for all interest derived from the loan or use of public moneys to be accounted for by the officer having the same in charge, even though the interest received was a gratuitous payment upon the part of the party using said money; and it cannot be said that it was the purpose of the Legislature to permit or authorize a public official to reap a profit upon public money loaned by him under the law. In the instant case, the money paid to West was paid as interest upon the county fund and was doubtless paid for the express purpose of influencing and controlling said West, as county treasurer, in permitting public money to remain in said bank, in order that the same might be used by the bank in its business and not withdrawn by the county treasurer for the transaction of the county's business unless absolutely necessary so to do. The law cannot sanction such a proceeding nor tolerate a public official being guilty of such official conduct. To remedy this, the Legislature made this particular thing a felony, and it would be contrary to the public policy of the state and in violation of statute to permit a public official to profit by such official misconduct.

In the case of Thompson v. Territory, 10 Okla. 409, 62 Pac. 355, it is said by this court:

"The identical question involved in this case has been before the courts of the different states a number of times, and the authorities are somewhat conflicting. In fact, in some instances the same court has apparently held both ways on the question: but. as this is the first time that this court has been called upon to lay down a rule for this territory, we shall not attempt to harmonize and distinguish the apparently conflicting authorities of other states; nor shall we feel obliged to follow the weight of authority if, in our judgment, some other rule is better and safer, and is in line with true legal principles when considered in connection with our own statutes. The plaintiff in error contends that, when he received any money as territorial treasurer, under the law it became his individual money, and he had a legal right to do what he pleased with it; that he had given a bond as required by law to account for all moneys coming into his hands: * * * and that the simple relation of debtor and creditor existed between him and the territory when there was any money in his hands which was received in his official capacity; and that, as he was only a debtor of the territory, he had a legal right to loan the funds, receive interest thereon, and to keep the same for his own private use and benefit. * * * Counsel for appellant have filed a voluminous brief, in which they cite a number of cases which support their contention that the territorial treasurer is a debtor of the territory, and is entitled to interest received on the funds in his hands; and perhaps the greater number of adjudicated cases adhere to that rule. But without expressing any opinion as to the correctness of these cases, under the statutes of the states from which they come, we decline to follow them, because under our statutes we believe that the territorial fund in the hands of the territorial treasurer is not the treasurer's individual money, but remains the money of the territory until properly paid out by the treasurer in the due course of his official duties; and the fact that the Legislature has failed to provide a public depository for the territorial funds makes no difference.

"An examination of our statutes from beginning to end fails to disclose a single section which indicates that the treasurer becomes the owner of the public moneys in his hands; but, on the contrary, all through the statutes the territorial funds are treated as property of the territory. We have carefully examined the authorities cited by appellant, and are familiar with the reasoning of these cases, but are unable to adopt the views therein expressed. The most of the cases are decided upon the theory that, whenever a public officer is held to a strict liability, it necessarily follows that he is a debtor and not a bailee or trustee. and therefore the money in his hands is his money. It is true that an ordinary trustee or bailee is bound to exercise only that diligence which one should prudently use in his own affairs of a

like character, and cannot be held to a strict account; but the territorial treasurer is not that kind of a bailee or trustee. In our judgment he is a bailee or trustee, but his liability is not measured by the common-law rules as to bailment and trusteeship alone. It is measured by the rules of the common law as modified by the modern decisions of the courts, the conditions of his bond, and by our own statutes, and he receives the public moneys as a public officer, and not as an individual; and by the express provisions of the statutes he can be compelled to submit his books, accounts, vouchers, and the funds in the treasury to the inspection of either branch of the legislative assembly or to any committee appointed for that purpose by the legislative assembly or by the Governor. * * * From these provisions of the statutes it is clear that the Legislature never intended that the treasurer's bond alone should stand in lieu of the territorial funds in the treasurer's hands, and to make the treasurer simply a debtor of the territory. * * * By inference, which is as strong as express language, the section of the law above referred to makes it the duty of the treasurer to hold the territorial funds to meet the obligations of the territory whenever needed for that purpose, and not to use the funds for any private purpose whatever. * * * The only reasonable view to take of the law, taking all of its different parts together, is that all moneys which the treasurer receives in his official capacity remain the funds of the territory until paid out according to law. This, in our judgment, is not only the law, but it is the safer rule for the territory. If the funds were to be treated as the money of the treasurer, it would open up the door to fraud and corruption for those who wish to take advantage of such fact; and, even in the absence of fraud, it would place before comparatively honest men great temptations to speculate with the funds in hazardous enterprises, or to loan the moneys on doubtful securities at a high rate of interest. * * * It is true, as a public officer, he may have an interest in it, but this interest is purely legal, and this legal title exists only to that degree which will enable him, as the representative of the territory, to preserve the fund for it. He has no such interest as authorizes him to speculate with the territorial moneys for his own benefit. He is simply the custodian of the moneys for the territory; but, instead of directing him where to keep the funds, the Legislature, in effect, made it his duty to find some suitable place where they may be safe and forthcoming when required. Public officers are not elected for their individual benefit, but for the benefit of the public. They are only the representatives of the people. For their services the law fixes the compensation; and particularly is this true in the case at bar, for the statutes not only fix the treasurer's salary, but further say, * * * that he shall not receive any fee or reward aside from his salary for transacting any business connected with the duties of his office."

In the case of Vansant v. State, 96 Md. 110, 53 Atl. 711, the Court of Appeals of Maryland said:

"Const. art. 3, sec. 45, limits the amount of compensation of clerks of the court in Baltimore to $3,500, above expenses. Art. 15, sec. 1, provides that every officer whose compensation is derived from moneys 'in any way growing out of or connected with his office' shall keep a book account of such sums, and to turn over to the state treasurer all such moneys in excess of the sum he is authorized to retain. Art. 4, sec. 37, provides that the clerks in Baltimore 'shall be entitled to no other perquisites or compensation' than $3,500, which shall be collected out of their fees and receipts. Code. art. 17, sec. 12, requires every clerk to return to the comptroller an account of all his 'fees, emoluments, and receipts, and art. 17, sec. 14, makes the clerk's bond answerable for the emoluments of his office, above the sum prescribed by the Constitution. A clerk, in accordance with law, received various license fees, which he deposited in various banks in his name as clerk. Held, that he was liable to the state for the perquisites and emoluments, consisting of the interest collected thereon by him."

Also, the Supreme Court of Illinois, in Hughes v. People, 82 Ill. 78, said:

"It follows, therefore, when the county court of St. Clair county fixed the compensation of appellant at $3,000 per annum, and $2,500 additional for clerk hire, to the total of these amounts was appellant entitled. He could claim nothing beyond them, and all sums beyond that total were payable into the treasury of the county.

"It appears appellant received from a banking institution the sum of $2,500, as compensation for the deposits he made therein of moneys which came to his hands as sheriff, and it is claimed by him he is not accountable for this sum to the county. The money was received by him as a perquisite or emolument of his office as sheriff; this is not questioned. The statute on this subject leaves the point free from doubt. Sec. 52 of the act of 1872, title 'Fees and Salaries,' provides as follows: 'All fees, perquisites, and emoluments received by said county officers, above the amount of compensation fixed by the county board, and clerk hire and other necessary expenses, shall be paid into the county treasury.' R. S. 1874, p. 522, c. 53.

"This being a prequisite or emolument acquired by official position, should be accounted for to the county."

From the foregoing authorities and statutes of this state, we are of the opinion that the interest collected by the plaintiff in error on the money deposited by him, as treasurer with the bank in question, belongs to the county, and that it was his duty to account for the same to the county; but, having failed to do so, the board of county commission-

ers was entitled to recover the same for the use and benefit of the county.

The judgment of the lower court is therefore affirmed.

By the Court: It is so ordered.