Dear Senator Garrison,
¶ 0 The Attorney General received a request for an official Attorney General Opinion from your predecessor, Senator Ben H. Robinson, addressing, in effect, the following questions:
 1. Do the provisions in Article X, Section 11 of the Oklahoma Constitution (pertaining to conflicts of interest) preclude a public member of the Environmental Quality Board, or a company, firm or other entity that employs or is owned by a Board member from a contractual or other business relationship with the Department of Environmental Quality?
 2. If the answer to Question 1 is yes, does Article X, Section 11 apply even though the entity that employs or is owned by the Board member is a public utility?
 3. If the answer to Question 1 is yes, does Article X, Section 11 apply even though the Board member is the part owner of an entity who has taken steps to ensure that he or she does not participate in the profits earned by that entity from the contract or business relationship in question?
 4. If the answer to Question 1 is yes, is the Ethics Commission Rule 74 O.S. Supp. 2004, ch. 62, app., R. 257:20-1-10(a)(1) unconstitutional as it relates to public members?
¶ 1 Your first three questions involve the application of Oklahoma Constitution Article X, Section 11 to situations where a public member of the State Environmental Quality Board ("Board"), either directly, or through a business entity in which he or she has some involvement (such as by employment or partial ownership), proposes to enter into a contractual or other business relationship with the Department of Environmental Quality ("DEQ" or "Department").
¶ 2 The fourth question is not directly related to the first three, and our answer is not tied to the way in which the first three questions are answered. As will be discussed, Article X, Section 11 is a penal provision the violation of which can result in a felony conviction and removal from office. The rules of the State Ethics Commission, including 74 O.S. Supp. 2004, ch. 62, app., R. 257:20-1-10(a)(1), also deal in part with conflicts of interest by public officers, but are enforced through civil
(not criminal) remedies, and must be treated as a separate body of law. These remedies are fundamentally different and separately enforceable. Whether a statute on civil remedies is constitutional is essentially unrelated to whether a criminal statute is valid, and the enforcement of the two statutes is entirely separate. Moreover, as discussed in more detail later, enforcement of a criminal sanction against a violator does not ordinarily preclude a civil action from proceeding, based on similar facts.
 I. The Constitutional Provision And Its Application To The Board
A. Construction of the constitutional provision
¶ 3 Public officers and members of the Legislature are prohibited from receiving benefits from the use of public funds in their hands or raised through their agencies for governmental purposes. Oklahoma Constitution Article X, Section 11 states:
 The receiving, directly or indirectly, by any
officer of the State, or of any county, city, or town, or member or officer of the Legislature, of any interest, profit, or perquisites, arising from the use or loan of public funds in his hands, or moneys to be raised through his agency for State, city, town, district, or county purposes shall be deemed a felony. Said offense shall be punished as may be prescribed by law, a part of which punishment shall be disqualification to hold office.
Id. (emphasis added).
¶ 4 This provision is broad in its sweep, and severe in its punishment of violations. Since violation of this provision results in punishment for a felony crime and disqualification to hold office it must be strictly construed, as are all penal statutes. A.G. Opin. 03-17 at 101. Strict construction of Article X, Section 11 shows it covers only officers of the State, or any county, city, town or member of the Legislature. It does not, for example, prohibit conduct of members of a board of education of a school district, since a school district is not the State, nor a county, city or town, but a separate entity (id.), nor does it include trustees of a public trust, which is also a separate and distinct legal entity. See A.G. Opin. 96-47 at 117.
¶ 5 We must first determine if Article X, Section 11 is "self-executing." A self-executing constitutional provision cannot be modified or extended by the Legislature. Kiowa CountyExcise Bd. v. St. Louis-San Francisco Ry. Co., 301 P.2d 677,681 (Okla. 1956). A constitutional provision is "self-executing" if it supplies a sufficient rule by means of which the right given may be protected, or the duty imposed may be enforced. In other words, in a "self-executing" provision, no further legislation is needed to put it in force. In re McNaught,99 P. 241, 252 (Okla.Crim. 1909). If a constitutional provision is self-executing, then the Legislature has no power to abridge or extend its pronouncement, whether by construction or otherwise.Kiowa County, 301 P.2d at 681.
¶ 6 Insofar as Article X, Section 11 prohibits named officers or legislative members from having any interest in or benefitting from the use of public funds in their hands or moneys to be raised through their agencies, no legislative action is needed to implement it. Likewise, the declaration that the violation is to be deemed a felony, a part of the punishment for which is disqualification to hold office, is also capable of standing alone without further legislation. In re McNaught,99 P. at 252. Thus, the prohibitory provisions of Article X, Section 11 are self-executing and cannot be substantially changed by the Legislature.[1]
¶ 7 Where the Constitution contains an indication further legislation is needed for carrying its provisions into effect, the provision is not self-executing. Maddox v. Hunt,83 P.2d 553, 555-56 (Okla. 1938). For instance, where the Constitution creates a crime but does not fix the maximum punishment nor state whether the imprisonment should be served in the state penitentiary or county jail, the Court of Criminal Appeals has held that such a constitutional provision is not self-executing, requiring further action by the Legislature. Nowakowski v.State, 116 P. 351, 352 (Okla.Crim. 1911). Where a provision is not self-executing the Legislature may act to implement the Constitution, and may qualify, construe or extend its provisions.See Indep. Sch. Dist. No. 9 v. Glass, 639 P.2d 1233, 1238
(Okla. 1982). However, the Legislature has no power to grant exemptions which are beyond constitutional limits. Id.; seeKiowa County, 301 P.2d at 681.
¶ 8 "A constitutional provision may be self-executing in one part and not self-executing in another part." Most WorshipfulGrand Lodge v. Bd. of County Comm'rs, 912 P.2d 708, 714 (Kan. 1996); 16 Am. Jur. 2d Constitutional Law § 108; seeNowakowski, 116 P. at 352. Such is the case with Article X, Section 11, since by its terms ("[s]aid offense shall be punished as may be prescribed by law"), the framers of this provision expected the Legislature to prescribe the punishment, subject to the felony statutes and office disqualification provisions. To this extent, Article X, Section 11 is not self-executing.
¶ 9 Shortly after adoption of the Oklahoma Constitution ArticleX, Section 11, the Oklahoma Legislature enacted a criminal statute (Okla. Rev. Laws 1910, § 2581) providing for punishment of the offense defined in the Constitution. West v. Bd. ofComm'rs, 158 P. 354, 355 (Okla. 1916) (" West I"). We conclude this statute, now codified at 21 O.S. Supp. 2004, §341[21-341], implements the punishment provisions of Article X, Section 11.[2]
¶ 10 There are no reported cases on prosecutions of State officials under Article X, Section 11. However, in State v.West, 171 P. 1127, 1128 (Okla.Crim. 1918) and State v.West, 171 P. 1128, 1129 (Okla.Crim. 1918) (collectively, "WestII"), criminal proceedings against a county treasurer under the above embezzlement statute were allowed to go forward, in effect holding that action of a county treasurer in keeping interest earned from investment of county funds entrusted to him constituted a violation. West I stated:
 The law cannot sanction such a proceeding nor tolerate a public official being guilty of such official conduct. To remedy this, the Legislature made this particular thing a felony, and it would be contrary to the public policy of the state and in violation of statute to permit a public official to profit by such official misconduct.
West I, 158 P. at 355.
¶ 11 Subsequent cases have held Section 341 or its predecessor is a special embezzlement statute wherein officers of the State or local government entity violate their trust as public officers. See, e.g., Wiley v. State, 349 P.2d 30, 36 (Okla. Crim. 1960); Lyon v. State, 100 P.2d 287 (syllabus ¶ 2) (Okla.Crim. 1940); Abernathy v. State, 101 P.2d 634
(syllabus ¶ 2) (Okla.Crim. 1940).
¶ 12 In Attorney General Opinion 01-32 we opined that if a conflict of interest exists which is prohibited by Article X, Section 11, it cannot be avoided if a city official recuses himself or herself from voting on payment of city funds to a private entity in which he or she has an interest. Id. at 142. In Attorney General Opinion 82-16 we held that pursuant to this provision, the board of regents of a state junior college may not enter into a contract with a business enterprise in which a member of the Board has an interest. Id. at 39. Other Opinions of the Attorney General have concluded a state agency may not contract for the sale of goods or services with one of its officers or with a business enterprise in which such officer may have an interest, and that neither the quantity nor the quality of the officer's interest in the business enterprise is material to the application of the Article X, Section 11 prohibition (A.G. Opin. 80-298, at 496), and that the prohibition is not overcome by the use of an intermediary (A.G. Opin. 81-129, at 227-28).
¶ 13 Because of the self-executing nature of the prohibitory part of Article X, Section 11, we believe an exemption from its operation (or clarification as to what is, or is not, a prohibited conflict) would require a constitutional amendment. As earlier discussed, the Legislature lacks the power to amend the prohibitory provisions of Article X, Section 11. Further, as will be later discussed, an exemption granted under a civil statute (such as rules of the Ethics Commission in the Oklahoma Constitution Article XXIX) will not serve to immunize an officer from prosecution under the criminal provision of the Constitution.
B. Application of Article X, Section 11 to the Board and itspublic members
¶ 14 Based on the required strict construction of Article X, Section 11 and the accompanying criminal statute, we conclude, as opined in A.G. Opin. 03-17, that the provision covers only the public officers named, i.e., officers of the State, a county or city, or officers or members of the Legislature. Is a "public member" (i.e., a part-time lay member) of a State board or commission, such as a public member of the Board, a "public officer" for purposes of the constitutional prohibition?
¶ 15 The phrase "public member" in your questions is not defined in the Oklahoma Constitution or criminal statutes. The only place it is mentioned is in the rules of the Ethics Commission in the context of a "public member" of a board or commission. Under such rules, a "public member" is "a member appointed to a compensated or uncompensated part-time position on a board, commission, council, authority, bureau, committee, state beneficial public trust, or other establishment . . . of the State of Oklahoma." 74 O.S. Supp. 2004, ch. 62, app., R.257:1-1-2. However, subsection 2(A) states a "public member" does not include "members of advisory bodies to the legislative, executive, or judicial branch of state government[.]" Id.
Consequently, we must examine the duties of a public member of the Board.
¶ 16 The Board consists of "thirteen (13) members appointed by the Governor with the advice and consent of the Senate." 27A O.S. 2001, § 2-2-101[27A-2-2-101](A). Board members generally are persons with expertise in environmental matters or who are associated with various groups or industries in the State impacted by environmental policies. Id. § 2-2-101(C). The statute prescribing duties of the Board states:
G. The Board shall:
 1. Appoint and fix the compensation of the Executive Director of the Department of Environmental Quality;
 2. Be the rulemaking body for the Department of Environmental Quality;
 3. Review and approve the budget request of the Department to the Governor;
 4. Assist the Department in conducting periodic reviews and planning activities related to the goals, objectives, priorities and policies of the Department;
 5. Provide a public forum for receiving comments and disseminating information to the public and the regulated community regarding goals, objectives, priorities, and policies of the Department at least quarterly. The Board shall have the authority to adopt nonbinding resolutions requesting action by the Department in response to comments received or upon the Board's own initiative; and
 6. Review and evaluate the need for amendments or additions to the Oklahoma Statutes regarding the programs and functions of the Department and make legislative recommendations to the Legislature.
Id. § 2-2-101.
¶ 17 While the Executive Director of DEQ is the chief administrator of that agency and has the power to hire and supervise DEQ employees (id. § 2-3-201(C)(2)), the Director serves at the pleasure of the Board. Id. § 2-3-201(A). As the rulemaking body for DEQ, "the Board is specifically charged with the duty of promulgating rules which will implement the duties and responsibilities of the Department pursuant to [the Oklahoma Environmental Quality] Code." Id. § 2-2-101(H). The Board therefore sets the broad policies to be followed by DEQ (and consequently its programs) in implementing requirements of the Code. Id. Its activities are considerably more than advisory.
¶ 18 We conclude a "public member" of a board or commission such as the Board is a "state officer" in light of such cases asWimberly v. Deacon, 144 P.2d 447, 453 (Okla. 1944), andOklahoma City v. Century Indemnity Co., 62 P.2d 94, 97 (Okla. 1936). In Wimberly, the issue was whether a member of the University of Oklahoma Board of Regents held an "office of trust" under laws of the State, within the meaning of Article II, Section 12 of the Oklahoma Constitution which provides, "No member of Congress from this State, or person holding any office of trust or profit under the laws of any other State, or of the United States, shall hold any office of trust or profit under the laws of this State." Id.; see Wimberly, 144 P.2d at 454. The court held that a member of the Board who had been called to active duty as an officer of the United States Army ipso facto
vacated his state office, and the Governor was authorized to immediately appoint a successor without awaiting a judicial determination of a vacancy. Id. In so holding, the court noted that the statutes require the Board to, among other things, (1) have the custody of the books and records of the university; (2) enact rules for the government of the university; and (3) elect and remove the president, professors, instructors, officers and employees of the university, (id. at 453) and concluded:
 It is apparent that membership on the Board of Regents is an office of trust, and that the Board exercises an important part of the sovereign power of the State. It is not merely an advisory office. . . . It follows that a member of the Board of Regents of the University holds an office of trust under the laws of this state. We need not determine whether he also holds an office of profit.
Id. (citations omitted).
¶ 19 For an officer to be a "public officer" (1) the "position must be created or authorized by law"; (2) certain duties must be imposed by law on the officer; and (3) "the exercise of some portion of the sovereign power"[3] must be involved.Century Indem. Co., 62 P.2d at 97.
¶ 20 Given the language in the Wimberly decision, we conclude a member of the Board, with duties prescribed in 27A O.S. 2001, § 2-2-101[27A-2-2-101](G), including rulemaking powers, the power to employ and set the compensation of the Director of the DEQ and the power to review and approve the DEQ budget submitted to the Governor, exercises elements of sovereign power, and is an "officer of the State." This comports with our previous conclusion in A.G. Opin. 80-298.
¶ 21 It may be argued that the money of DEQ does not "pass through the hands" of a public member of the Board, nor is such money "raised through his or her agency" for state purposes. It is true that a public member of the Board does not directly administer or raise money in the DEQ budget. But a member of the Board clearly exercises considerable control over DEQ's financial activities by virtue of oversight of the DEQ budget request to the Governor, by establishing DEQ policies (and programs) through rulemaking, and by the power to hire and fire the DEQ Director. We conclude that the policy against conflicts of interest stated in Article X, Section 11 may not be overridden by a hypertechnical reading of the statutes pertaining to the Board's duties. See Williams v. City of Norman, 205 P. 144, 146
(Okla. 1921). A public member of the Board is responsible, at least indirectly, for raising and using State money and thus must be subject to the provisions of Article X, Section 11.
¶ 22 Your second and third questions relate to specific circumstances, i.e., the type of entity involved or the segregation of the board member from certain profits. Whether a public member of the Board (1) owns an interest in a business entity proposing to have a service contract with DEQ, or (2) the member is employed by such a company, or (3) the relationship is more remote, such as employment by a public utility providing utility services to DEQ, or (4) the Board member is somehow "insulated" from profits of the transaction, appears to be immaterial under Article X, Section 11. The constitutional provision contains no apparent exceptions, and the Legislature can create no such exceptions, absent a constitutional amendment. We conclude, as to your first three questions, that there are no "bright line" exceptions to the ban of Article X, Section 11 against conflicts of interest by State officers. Whether a particular situation would give rise to a violation of the constitutional provision would depend on its specific facts and circumstances, and thus cannot be addressed in an Attorney General's Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
 II. Application Of Other Statutes To The Board And Its Public Members
¶ 23 From your first three questions, it appears you may be aware of the qualifications set out in 62 O.S. Supp. 2004, §371[62-371] as to what constitutes an interest in a contract with respect to transactions of cities, counties, school districts and other local governmental entities. However, Section 371 is contained in a chapter of Title 62 captioned "Misappropriation of Public Funds" creating a civil cause of action allowing taxpayers to sue in district court when officials authorize payment under illegal or unauthorized contracts. The predecessor statute, Okla. Rev. Laws 1910, § 6776, was enacted shortly after statehood. Subsequent amendments to this statute set out a number of situations which are not deemed to be a prohibited interest of a governing body member of a county, city or school district.[4]
¶ 24 By its terms, Section 371 does not apply to State
entities such as the Board. Formerly a similar statute, 74 O.S.1971, § 1405[74-1405], purported to authorize a state agency to contract with one of its employees for goods or services "after public notice and competitive bidding," but this statute was repealed more than 22 years ago. 1982 Okla. Sess. Laws ch. 338, § 61. Sections 372-374 of Title 62 do include state officers in statutes creating a civil right of action to redress unauthorized or void contracts involving State or local government officers. This civil remedy appears to be available independent of the criminal sanction under Article X, Section 11. Applicability of civil sanctions will be discussed in a later section of this Opinion.
 III. The Role Of The Ethics Commission
¶ 25 Your fourth question deals with the State Ethics Commission and its rules relating to conflicts of interest. Therefore, we must examine the history of the Ethics Commission and its authority to make and implement rules. We must determine how Oklahoma Constitution Article XXIX (creating and empowering the Ethics Commission) interacts with Article X, Section 11.
¶ 26 Other than the exceptions previously discussed for city, county or school district officials, the only exceptions or qualifications to the public policy against conflicts of interest are those of the Ethics Commission. Since the adoption by Oklahoma voters of Article XXIX to the Constitution in 1990, discussed below, no reported cases have dealt with Article X, Section 11 or the related criminal statute. This in itself may be an indication that the Ethics Commission is exercising a different, yet significant role in the enforcement of conflict of interest violations by public officials.
¶ 27 In 1990, by State Question 627, voters adopted Oklahoma Constitution Article XXIX, Sections 1-7 pertaining to the State Ethics Commission. Article XXIX, Section 3(B) mandates the Ethics Commission to make rules for ethical conduct of state officers and employees. Such rules are to be presented to each House of the Legislature, and if not disapproved by joint resolution, shall be subject to veto by the Governor. Okla. Const. art. XXIX, § 3(C). If approved by the Legislature and not vetoed by the Governor the rules become effective. Id. The procedure is the same as for approval of any other bill or joint resolution. Id.
Similar rules apply to amendment of ethics rules. Okla. Const. art. XXIX, § 3(D). Ethics rules so adopted have the same weight as statutes. Ethics Comm'n v. Keating, 958 P.2d 1250, 1259
(Okla. 1998). The power to regulate ethics of state officers and employees has been held, in effect, to be coextensive between the Ethics Commission and the Legislature, and neither may completely usurp the powers of the other. Id.; see also Ethics Comm'n v.Cullison, 850 P.2d 1069, 1075 (Okla. 1993). Cullison stated:
 Article 29 § 3 requires the Ethics Commission to promulgate rules of ethical conduct for state officers and for campaigns for elective state office. The obvious meaning of this provision is that the people of the State desire the ethical conduct of state officials to be regulated by rules of the Ethics Commission.
Id. at 1076 (emphasis added).
¶ 28 The Ethics Commission shall investigate violations of ethical rules as to state officers and employees, and prosecute them in district court. Okla. Const. art. XXIX, § 4. Investigations are to be initiated within three (3) years of the alleged violation. 74 O.S. Supp. 2004, ch. 62, app., R. 257:30-1-7(a). The district court may assess civil penalties for rules violations and fines collected are to be deposited in the State's general revenue fund. Okla. Const. art. XXIX, § 4(A). The Ethics Commission shall also enforce other ethics laws as prescribed by law (Okla. Const. art. XXIX, § 4(B)), and in "its investigations, the Ethics Commission shall have subpoena power." Okla. Const. art. XXIX, § 4(C). The Commission has power to make interpretations of its rules, which are binding on the Commission. Okla. Const. art. XXIX, § 5. Section 6 of Article XXIX provides that this Article of the Constitution shall not prevent enactment of criminal laws pertaining to ethical violations by "political candidates, government officers, government employees, or other persons." Id.
¶ 29 Accordingly, we conclude that by adoption of Article XXIX of the Constitution, state voters authorized and empowered the Ethics Commission to make rules applicable to state officers and employees (subject to review of such rules by the Legislature and the Governor), and to interpret, implement and enforce such rules of conduct for state officers and employees. Provided, Sections 3 and 4 of Article XXIX indicate enforcement actions are of acivil nature, since they refer to "penalties" being assessed by the district court, and further, Section 6 provides that nothing in Article XXIX prevents other laws from being enacted with criminal penalties exacted for prohibited conduct. This seems to be a clear recognition by the constitutional framers that Article XXIX operates independently from enforcement of criminal statutes.
¶ 30 Since the penalty prescribed in Article X, Section 11 and in the implementing statutes is a felony, i.e., a criminal sanction, the enforcement of this constitutional ban appears to be a matter outside the jurisdiction of the Ethics Commission, comprising an alternative sanction.
¶ 31 Just as with statutes, administrative rules and regulations are presumed to be constitutional. Okla. AlcoholicBeverage Control Bd. v. Burris, 626 P.2d 1316, 1319 (Okla. 1980). Rules will be upheld as constitutional so long as they are not plainly contrary to the Constitution, or no grounds can be conceived to justify them. Id.
¶ 32 Therefore, we do not say, as a matter of law, that 74 O.S. Supp. 2004, ch. 62, app. R. 257:20-1-10(a), or any other rule of the Ethics Commission is unconstitutional. They are different in nature than Article X, Section 11, enforced in an entirely different manner and with different consequences.
 IV. The Ethics Rule
¶ 33 Rule 257:20-1-10 of Title 74 currently provides as follows:
 (a) Prohibition on contracting with state — Exceptions.
 (1) State officers and state employees. No state officer or state employee, except a public member,
shall sell, offer to sell or cause to be sold, rent or lease either as an individual or through any business enterprise in which he holds a substantial financial interest, goods, services, buildings or property to the governmental entity with which the officer or employee is associated or to any business entity licensed or regulated by the governmental entity which the officer or employee serves unless real property is acquired from the state officer or state employee either by condemnation proceedings or the price to be paid for such property is approved in writing by the appointing authority of the agency acquiring such property and by the Governor. A public member shall be required to disclose in detail any attempt to sell, offer to sell or cause to be sold, rent or lease either as an individual or through any business enterprise in which he holds a substantial financial interest, goods, services, buildings or property to any governmental entity with which the public member is associated or to any business entity licensed or regulated by the governmental entity which the public member serves.
Nothing in this subsection shall allow a public member of a board of regents or a member of the immediate family of the public member or a business or entity with which the public member or a member of the immediate family of the public member is associated to contract with an institution of higher education over which the public member has jurisdiction. Such disclosure shall be made part of the minutes of the meeting of the entity on which the public member serves and the public member shall be disqualified from participating in the discussion on, voting on, influencing or attempting to influence any action taken by the entity on the proposed transaction as provided in Section 8 of this chapter. This section shall not apply to students who are engaged in bona fide work-study programs at institutions of higher education within the Oklahoma State System of Higher Education.
 (2) Limited exceptions. Except for a legislator or a statewide elective officer, Paragraph (1) of this subsection shall not apply to a state employee or state officer if real property is acquired from the state officer or state employee either by condemnation proceedings or the price to be paid for such property is approved in writing by the appointing authority of the agency acquiring such property and by the Governor.
Id. (emphasis added).
¶ 34 Further, subsection (c) of the rule provides:
 (c) Exceptions for all state officers and state employees. Subsections (a) and (b), except as prohibited by law, shall not apply to:
 (1) contracts for goods or services valued at less than five thousand dollars ($5,000);
 (2) contracts entered into after public notice by the governmental entity and compliance with competitive bidding procedures; and
 (3) employment contracts entered into with former legislators.
Id.
¶ 35 Subsection (b), referred to above, prescribes limits outside of which present or former legislators may not have an interest in a contract with the State.
¶ 36 A "substantial financial interest," for purposes of this rule, is defined as:
 [A]n interest that could result in directly or indirectly receiving a substantial pecuniary gain or sustaining a substantial pecuniary loss as a result of ownership or interest in a business entity, or as a result of salary, gratuity or other compensation or remuneration from any person, partnership, organization or association. The term "substantial financial interest" includes, but is not limited to, an ownership interest of five percent (5%) or more in a business enterprise or an interest in an entity from which dividends of one thousand dollars ($1,000.00) or more were derived during the preceding calendar year.
74 O.S. Supp. 2004, ch. 62, app. R. 257:1-1-2.
¶ 37 Pursuant to Article XXIX, Section 4(A) and 74 O.S. Supp. 2004, ch. 62, app. R. 257:1-1-6(j), (k), the Ethics Commission may prosecute individuals in the district court where the alleged violations occurred, may settle cases with or without court order, and may collect civil fines in settlement thereof.
¶ 38 In its present form, the Ethics Commission Rule applies to state employees as well as state officers. It is much more liberal than the conflict of interest prohibition stated in Article X, Section 11, and as to state officers might allow conduct which would otherwise be a felony under the Constitution. We must determine whether these conflict of interest rules (and exceptions) may be allowed to stand in light of the Constitution's stark prohibition.
 V. Concurrent Remedies
¶ 39 Various provisions of the Constitution must be construed insofar as possible to promote harmony and give effect to each provision. Oklahoma City Urban Renewal Auth. v. Med. Tech. Research Auth., 4 P.3d 677, 686 (Okla. 2000). Further, constitutional provisions are to be given a more liberal construction than are statutes, to promote the spirit of the law.State v. Frisbie, 127 P. 1091, 1097 (Okla.Crim. 1912). Courts will not readily adopt an interpretation of a constitutional provision which renders another provision useless.See Williams v. Shearson Lehman Bros., 917 P.2d 998, 1002
(Okla.Ct.App. 1996).
¶ 40 As earlier stated, we conclude Article X, Section 11 and Article XXIX of the Oklahoma Constitution (including the Ethics Commission Rules, 74 O.S. 2001 Supp. 2004, ch. 62, app. R. 257:1-1-1-257:30-1-9) and 62 O.S. 2001, §§ 372-374 are each valid and enforceable and may operate concurrently. Article XXIX and associated ethics rules do not purport to create exceptions to the criminal sanctions of Article X, Section 11. Therefore, conduct of a state officer or employee may subject him or her to both the civil penalties under 62 O.S. 2001, §§ 372-374 and the Ethics Commission's rules, and the criminal sanctions of Article X, Section 11.
¶ 41 Such dual enforcement is permissible under Oklahoma law. This principle is illustrated in the West I and West II cases where prosecution of both civil and criminal cases was permitted to proceed concurrently, based on substantially the same facts.See West v. Bd. of Comm'rs, 158 P. 354 (Okla. 1916) ("WestI"); State v. West, 171 P. 1127, 1128 (Okla.Crim. 1918) andState v. West, 171 P. 1128, 1129 (Okla.Crim. 1918) (collectively, "West II"). Most recently, in Carroll Fisher,Insurance Commissioner v. The Honorable Senate, 2004 OK 76,
___ P.3d ___ (Okla. 2004), the Oklahoma Supreme Court declined to stay impeachment proceedings in the Oklahoma State Senate, notwithstanding the protestations of the Insurance Commissioner that going forward with the impeachment (essentially a civil matter) while criminal charges were pending would deprive the Commissioner of due process, in effect forcing him to choose between presenting evidence in the impeachment trial which might be incriminating, or remaining silent in the non-criminal proceedings, and being subjected to removal. The court citedState ex rel. Oklahoma Bar Association v. Gasaway,863 P.2d 1189, 1196 (Okla. 1993), which held "[t]here is nothing inherently repugnant to due process in requiring [a party] to choose between giving testimony at [a] disciplinary hearing and keeping silent, [although] giving testimony at the hearing may damage his criminal case. . . ." The United States Supreme Court held in United States v. Kordel, 397 U.S. 1, 12 (1970), that simultaneous civil and related criminal proceedings do not constitute unfairness and want of consideration for justice so as to require the reversal of a criminal conviction.
¶ 42 Thus, although the rule of the Ethics Commission is more liberal, allowing relatively generous exceptions for public members of boards and commissions, we conclude that compliance with such ethics rules will not, and cannot, guarantee that an officer engaging in such conduct will not be subject to criminal sanction and disqualification to hold office under Article X, Section 11 of the Oklahoma Constitution. Conduct that avoids violation of the conflict of interest principles set out in Article X, Section 11 will also avoid violation of the Ethics Commission rules, but not vice versa. If a public member of a board engages in conduct allowed under the provisions of 74 O.S. Supp. 2004, ch. 62, app. R. 257:20-1-10(a), he or she runs the risk of violating the more strict constitutional prohibitions. The Ethics Commission Rules cannot be read as granting an exception to the Article X, Section 11 prohibition.
¶ 43 Whether a public officer would be prosecuted for a conflict of interest violation under Article X, Section 11 rests in the sound discretion of the district attorney with jurisdiction over the matter. See Gray v. State,650 P.2d 880, 882 (Okla.Crim. 1982). Whether a particular offense is prosecuted as a crime under Article X, Section 11 is a matter of prosecutorial discretion. See Isom v. State, 646 P.2d 1288,1292 (Okla.Crim. 1982).
¶ 44 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Article X, Section 11 of the Oklahoma Constitution prohibits the receiving, directly or indirectly, by any officer of the State or of any county, city, or town, or member or officer of the Legislature, of any interest, profit or perquisites arising from the use or loan of public funds in his or her hands or moneys to be raised through his or her agency for State, city, town, district or county purposes and deems such violation a felony, which shall be punished as may be prescribed by law, a part of which punishment shall be disqualification to hold office. A public member of the Environmental Quality Board is an" officer of the State" for purposes of Article X, Section 11. 27A O.S. 2001, § 2-2-101[27A-2-2-101](G); Wimberly v. Deacon, 144 P.2d 447, 453 (Okla. 1944).
 2. There are no recognized exceptions to the prohibitions of Article X, Section 11 against officers of the State having an interest in contracts between the agency they represent and business entities with which they have a relationship. Whether a particular relationship would violate Article X, Section 11 involves questions of fact that cannot be addressed in an Attorney General's Opinion. 74 O.S. 2001, § 18b(A)(5).
 3. The Ethics Commission Rules promulgated under Okla. Const. art. XXIX, §§ 1-7, including the Ethics Commission Rule codified at 74 O.S. Supp. 2004, ch. 62, app. R. 257:20-1-10(a), may be enforced independently from or concurrently with the conflict of interest prohibition in Article X, Section 11. Remedies under the Ethics Commission Rules are civil in nature, while violation of Article X, Section 11 is a felony criminal offense. The Ethics Commission Rule cannot be read as granting an exception to the Article X, Section 11 prohibition.
 4. Conduct which may be permitted under the Ethics Commission Rules may constitute a violation under Article X, Section 11. Whether particular acts will be prosecuted under Article X, Section 11, is a matter of prosecutorial discretion. See Gray v. State, 650 P.2d 880, 882 (Okla.Crim. 1982); Isom v. State, 646 P.2d 1288, 1292 (Okla.Crim. 1982).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 LYNN C. ROGERS Assistant Attorney General
[1] The self-executing nature of Article X, Section 11 was extensively discussed in Attorney General Opinion 80-145, which concluded the Legislature is not free to create statutory exemptions to this provision. However, Opinion 80-145 has been withdrawn as being too broad. A.G. Opin. 96-47 at 117.
[2] The criminal statute provides:
 Every public officer of the state or any county, city, town, or member or officer of the Legislature, and every deputy or clerk of such officer and every other person receiving any money or other thing of value on behalf of or for account of this state or any department of the government of this state or any bureau or fund created by law and in which this state or the people thereof, are directly or indirectly interested, who either:
 First: Receives, directly or indirectly, any interest, profit or perquisites, arising from the use or loan of public funds in the officer's or person's hands or money to be raised through an agency for state, city, town, district, or county purposes; or
 Second: Knowingly keeps any false account, or makes any false entry or erasure in any account of or relating to any moneys so received by him, on behalf of the state, city, town, district or county, or the people thereof, or in which they are interested; or
 Third: Fraudulently alters, falsifies, cancels, destroys or obliterates any such account, shall, upon conviction, thereof, be deemed guilty of a felony and shall be punished by a fine of not to exceed Five Hundred Dollars ($500.00), and by imprisonment in the State Penitentiary for a term of not less than one (1) year nor more than twenty (20) years and, in addition thereto, the person shall be disqualified to hold office in this state, and the court shall issue an order of such forfeiture, and should appeal be taken from the judgment of the court, the defendant may, in the discretion of the court, stand suspended from such office until such cause is finally determined.
21 O.S. Supp. 2004, § 341[21-341].
[3] While "sovereign power" is a broad term, it essentially means the use of governmental authority over the people of a state, except where the power has been exclusively reserved to the federal government. See Coyle v. Smith, 113 P. 944, 985
(Okla. 1911) (Kane, J., dissenting).
[4] This statute, 62 O.S. Supp. 2004, § 371[62-371], provides in pertinent part:
 A. Except as otherwise provided in this section, no board of county commissioners, nor city council, nor board of trustees of any town, nor any district board of any school district in this state, nor any board of any local subdivision of this state shall make any contract with any of its members, or in which any of its members shall be directly or indirectly interested. All contracts made in violation of this section shall be wholly void.
Id. (emphasis added).
Situations which are excluded from operation of the statute include (1) depositing funds in a bank; (2) contracts with nonprofit 501(c)(3) entities not involving payment of salaries; (3) monthly billings of regulated utilities, telephone companies or electric cooperatives; (4) contracts under which a technology center school district will provide training for a company which employs a board member; (5) municipal officers subject to 11O.S. Supp. 2004, § 8-113[11-8-113]; (6) contracts with members of school boards or rural water district boards in rural communities (i.e., not including a municipality over 2,500 population) where the board member's business is the only one of that kind within ten (10) miles, and the contract does not involve more than $10,000 annually; (7) members of conservation district boards engaged in transactions with the Oklahoma Conservation Commission under 27A O.S. 2001, § 3-2-106[27A-3-2-106]; (8) purchase of fuel by counties from a cooperative agricultural association where a county commissioner is a member of the co-op; and (9) transactions where the interest of the member or member's spouse in the contracting entity does not exceed 5%. Further, the statute requires members involved in one of the situations described above to abstain from voting on any matter relating to such contract. Id. § 371(D).
Sections 372-374 of Title 62 (applicable to the State as well as local governmental officers) which immediately follow this statute, make officers who enter into fraudulent, void or unauthorized contracts personally liable in damages, and upon failure of the proper officers to seek recovery of money under such unlawful contracts, authorize taxpayers to institute a suit in law or equity for the recovery of the money, with treble damages, i.e., the so-called "qui tam" laws. See, e.g., Stateex rel. Fent v. State ex rel. Okla. Water Res. Bd.,66 P.3d 432, 438 (Okla. 2003).